NATIONAL BANK OF ROYALTON v. JOSIAH D. CUSHING, HENRY CUSHING, NELSON ELLISON, C. B. WRIGHT, ELISHA BUGBEE, L. N. BUGBEE.*

[IN CHANCERY.]

*Subrogation. Attaching Creditor. Mortgage on Partnership and Private Property to Secure Partnership Debt.*

1. When a partner mortgages his *private property* to secure a *partnership debt,* which is also secured by a mortgage on the *partnership property,* he stands *surety* for the *partnership;* and is entitled to be *subrogated* to the *rights* of a *mortgagee;* and the *creditors* of such *surety* are entitled to the *same right* of *subrogation* as the *surety himself;* the partnership property being a primary fund, the private property a collateral, pledged to pay the debt.
2. As between a subsequent mortgagee of the partner's *private property,* who, having attached the other partner's interest, and having purchased the original mortgage, foreclosed the one on the *partnership* property and an attaching creditor of the *partnership property,* who, having *paid the decree in the foreclosure suit,* brings his bill to foreclose *both* mortgages, such creditor is *not entitled to be subrogated to the rights of the first mortgagee.* The *redemption* was *payment.*
3. Doctrine of subrogation and its application stated: it rests in justice, not contract; it applies to *sureties,* and not to a *stranger,* nor, ordinarily, a *levying creditor.*

THIS cause was heard at the December Term, 1879, BARRETT, Chancellor. Hearing on the pleadings and proofs, defendants, Cushings and Ellison, defending. Decree for orator as prayed, against the defendants confessing; decree, *pro forma,* for defend-

*Heard at the February Term, 1880.

ants answering, that the bill be dismissed with costs. The facts appear in the opinion of the court.

*Hunton & Stickney,* for the orator.

The legal effect is the same as if the private and partnership property had been described in the *same* mortgage. Rob. Dig., 99. The orator and defendants are tenants in common as to the partnership property; the defendants are therefore bound to contribute. *Wheeler* v. *Willard,* 44 Vt. 640. The orator by redeeming is substituted in the place of Pierce. *Hubbard* v. *Ascutney M. Co.,* 20 Vt. 402; *Bullard* v. *Leach,* 27 Vt. 491. Attaching creditor has the rights of the mortgagee. *Warren* v. *Warren et el.,* 30 Vt. 530. Contribution, in proportion to relative value. *Gates* v. *Adams,* 24 Vt. 70; *Danforth* v. *Smith,* 23 Vt. 247; 15 Vt. 576; *Chittenden* v. *Barney,* 1 Vt. 28; Adams Eq. 270; Story Eq. J., s. 475, 484. See also 32 Vt. 79; 34 Vt. 173; *Burpee* v. *Parker,* 24 Vt. 567. Levy, a nullity, in not stating the amount of the mortgage. Gen. Sts. 366, s. 34; *Swift* v. *Dean,* 11 Vt. 325. The defect is one of substance; 34 Vt. 315; 27 Vt. 381. If the orator can take nothing by the levy, he is entitled to a decree of foreclosure. *Chandler* v. *Dyer,* 37 Vt. 345; *Payne* v. *Hathaway,* 3 Vt. 212; 20 Vt. 388; 27 Vt. 491.

*James J. Wilson,* for the defendant.

The last grantee of premises, covered by mortgage, sold in separate parcels, must raise the whole burden. *Lyman* v. *Briggs,* 32 Vt. 79; 2 Lead. Cas. 238. Wright, pledging his separate property for the security of the partnership debt, became a surety for the partnership. *Averill* v. *Loucks,* 6 Barb. 477; *Stevens* v. *Goodenough,* 26 Vt. 685; *Johns* v. *Reardon,* 11 Md. 465; *Loomer* v. *Wainwright,* 3 Sand. 155, 135. A surety is entitled to be subrogated to the rights of the creditor. 1 Lead. Cas. 154; and the creditors of the surety are also entitled to subrogation. 11 Wend. 312; *Neff* v. *Miller,* 8 Pa. St., 348; 6 Barb. 471. A court of equity will not convert a payment into a purchase to the detriment of sureties. *Bullard* v. *Leach,* 27 Vt. 491; *Walker* v. *King,* 44 Vt. 601; 40 Vt. 408; 2 Lead. Cas. in Eq. 221; *Fagg*

v. *Douglass*, 8 Leigh, 597 ; *Hines* v. *Keller*, 3 Watts & S. 401 ; 5 Dana, 241 ; *Dow* v. *Shaw*, 4 Johns. Ch. 14 ; *Wise* v. *Sheppard*, 13 Ill. 41 ; 8 Mo. 408 ; *Smith* v. *Bing*, 3 Ohio, 33 ; 12 B. Monroe, 398, 577.

The opinion of the court was delivered by

Ross, J. The principal facts on which the questions in this case arise, are, that Wright & Bugbee, partners, Oct. 8, 1873, borrowed for partnership purposes of Pierce $3,000, and gave their note therefor, secured by a mortgage on the partnership property in Rochester, and by a mortgage from Wright, contemporaneously executed, of his individual property in Bethel ; that April 13, 1874, Wright further mortgaged his Bethel property to defendants Cushing & Co. to secure his private debt to them ; that in May, 1874, defendants Cushing & Co. duly attached Bugbee's half of the partnership property in Rochester to secure a debt they had against Bugbee, regularly obtained judgment in the suit, and levied regularly the execution on an undivided interest therein May 31, 1875 ; that Wright September 16, 1874, conveyed his half of the Rochester property conditionally and subject to the Pierce mortgage to Bugbee ; that December 25, 1874, the orator attached the Rochester property on a debt against the partnership, but obtained service of the writ, and judgment thereon, only upon and against Wright, and June 6, 1876, attempted to levy the execution on the residue of the Rochester property covered by the Pierce mortgage, which was left unlevied upon by defendants Cushing & Co., but treated in making said levy the Pierce mortgage as resting both upon the Rochester and upon the Bethel property ; that Cushing & Co. bought the Pierce note and took assignments of the mortgages given to secure the same Oct. 11, 1875 ; brought a bill to foreclose the mortgage on the Rochester property to the December Term, 1875, making the orator a party defendant, and obtained a decree of foreclosure, the time of redemption to expire in one year ; that the orator was notified in March, 1876, that the Pierce note was given for money to use in the partnership of Wright & Bugbee, and that the mortgage to secure the same on the Rochester property covered

partnership property, and that on the Bethel property covered Wright's private property, and of Cushing & Co's mortgage thereon; that the orator paid the amounts due Cushing & Co. under the decree of foreclosure of the Pierce mortgage on the Rochester property in December, 1876, and February, 1877; and now has brought this bill against Wright & Bugbee and Cushing & Co. for the foreclosure of the Pierce mortgage on the Rochester property, and also his mortgage on the Bethel property, claiming that by payment of Wright & Bugbee's debt to Pierce, it is entitled to be subrogated to all the rights which Pierce originally had to enforce payment of that debt by the foreclosure of both mortgages. Bugbee did not redeem the Rochester property from the levy thereon by Cushing & Co., nor from the levy thereon by the orator.. The defendants Cushing & Co., before the bill was brought offered to pay to the orator such a proportion of the Pierce debt as the premises covered by their levy was of the whole Rochester premises covered by the mortgage given by Wright & Bugbee, October, 8, 1873, and have since paid the same. It appears that at the time the orator levied on the Rochester property, if the whole of the. Pierce debt had been treated as resting thereon, the appraised value of the premises would not quite have satisfied that debt; and there would have been no equity left for the orator to have levied upon; and that the orator found an equity therein, on which to levy, only by treating about $1,000 of that debt as resting on the Bethel property; and also that since the redemption by the orator of the premises from the foreclosure by Cushing & Co., the orator and Cushing & Co. have been jointly in possession of the Rochester property, which has depreciated one half or more in value. This depreciation has resulted partly from non-use, and partly from general depreciation common to all property, but without any particular fault chargeable upon either party. The defendants Cushing & Co., before they purchased the Pierce debt had taken possession of the Bethel property under their mortgage from Wright. The contention is whether on this state of facts the orator is entitled to enforce the mortgage given by Wright to Pierce for the security of the Pierce debt on the Bethel property against Cushing & Co.,

and their mortgage from Wright thereon. The Pierce debt being contracted by the partnership for partnership purposes, the partnership or Rochester property, was the primary fund from which it should be satisfied. If Wright had been compelled to pay it from the Bethel property, as between him and the partnership, he could have compelled the repayment thereof from the partnership property. Between Wright and the partnership under the two mortgages the Rochester property stood as principal or primary fund, and the Bethel property as surety or collateral fund pledged for the payment of the Pierce debt. Pierce could pursue either or both funds until payment was received. But if he compelled payment out of the latter, Wright and his creditors, as against the former, had the right to be subrogated to Pierce's right acquired by the mortgage of the former, and compel repayment. 1 L. Cases in Eq., *Dering* v. *Earl of Winchelsea,* 154, and cases cited. It is there said : " The equity of a surety to be subrogated to the rights which the creditor has against the principal debtor or his estate exists as well when the surety's property only is pledged, as when he came under a personal responsibility." *Neimcewicz* v. *Gahn,* 3 Paige, 614, 642, 648 ; 11 Wend. 312.

And the creditors of a surety have the same right of subrogation which he has ; *Neff* v. *Miller,* 8 Pa. St., 348, 350. The principle extends beyond the ordinary relation of principal and surety, and applies in every instance where one man has paid a debt for which another is primarily liable, and which should in point of equity and good conscience, have been discharged by the latter. *Morris* v. *Oakford,* 9 Pa. St. 498. Thus while subrogation will not ordinarily be enforced as between joint or principal debtors, *Bailey* v. *Brownfield,* 8 Harris, 41 ; *Hogan* v. *Reynolds,* 21 Ala. 56, it will be so whenever the circumstances are such as to make it the duty of one to pay the whole in case of others ; as when upon the dissolution or reconstruction of a firm, one or more of the partners promises to pay the partnership debts in consideration of receiving, or retaining the assets, which will place the rest in the position of sureties ; *Aflalo* v. *Fourdrinier,* 6 Bing. 306 ; *Wood* v. *Dodgson,* 2 M. & S. 195 ; and entitle them to subrogation,

if subsequently called upon for payment by the creditors. *The Ætna Ins. Co.* v. *Wires*, 28 Vt. 93 ; *Morris* v. *Oakford.*

It is only in cases where the person paying the debt stands in the situation of a surety or is compelled to pay in order to protect his own interests, that a court of equity substitutes him in the place of the creditor as a matter of course, without any special agreement. A stranger paying the debt of another will not be subrogated to the creditor's rights without an agreement to that effect. *Swan* v. *Patterson*, 7 Md. 164 ; *The Bank of United States* v. *Winston*, 2 Brockenborough, 254 ; *Burr* v. *Smith*, 21 Barb. 262. Such a payment absolutely extinguishes the debt and security. *Sanford* v. *McLean*, 3 Paige, 117, 122 ; *Banta* v. *Garnes and others*, 1 Sanf. Ch. 384 ; *Wilkes* v. *Harper*, 1 Coms. 586 ; *The Bank of U. S. et al.* v. *Winston's Exrs. et al.*, 2 Brockenborough, 252, 254 ; *Douglass* v. *Fagg*, 8 Leigh, 588, 602.

In *Averill* v. *Loucks*, 6 Barb. 470, on an application to direct the sheriff in regard to paying over surplus funds realized from the sale of real estate, it is held, that a partner, who gives a mortgage upon his separate property to secure a partnership debt, thereby becomes a surety for the firm, and is entitled to the rights and privileges of that character ; and that his separate creditors succeed to his rights and privileges as such surety ; and that in the distribution of the surplus funds derived from the sale of partnership property the partner and his separate creditors had the right to insist the partnership property, being primarily liable, should be first applied towards the payment of the debt.

In *Johns* v. *Reardon and wife*, 11 Md. 465, the husband and wife executed a mortgage of real estate, belonging one-half to each, but so defectively executed by the wife that it only bound the husband. Afterwards they both duly executed a mortgage of the same real estate. Both mortgages were to secure the payment of the husband's debt. The property was sold under the second mortgage, which was adjudged to have the priority in right of payment, and which absorbed more than the husband's interest in the land. It was held that the wife's interest therein was related as surety to the debt ; and that the surplus belonged to the wife and not to the first mortgagee.

*Ayres* v. *Husted*, 15 Conn. 505, is to the same effect in principle. The case of *Douglass* v. *Fagg*, 8 Leigh, 597, is a strong case, holding that when, by subsequent arrangement, the relations of two parties are so changed that it becomes the duty of one to pay a debt for which the other was originally liable, thereafter the latter, as between them, will be treated as a surety for the former for its payment, and be entitled to all the rights of a surety by way of subrogation. The court say: " The doctrine of subrogation, it must be remembered, is the offspring of natural justice, and is not founded in contract. It is the creature of equity, and is so administered as to attain real, essential justice without regard to form. " He who, in administering it, would *stick in the letter*, forgets the end of its creation, and perverts the spirit which gave it birth." Judge CARR, in *Enders* v. *Brune*, 4 Rand, 438, says: . . . " Courts in applying the doctrine have taken care to make it subserve the ends of justice. Thus they always enquire who is the principal debtor, and if any one comes into his room as to the creditor they absolve previous sureties," holding that the supplemental surety comes also into the room of the principal debtor, as to previous sureties.

Our court has recognized the same doctrine. In *Stevens et al.* v. *Goodenough*, 26 Vt. 676, the husband and wife gave their note for the payment of part of the purchase money of land which was conveyed to the wife, and secured the same by a mortgage of the land. Subsequently, she, through the intervention of a third person, conveyed to the husband three-eighths of the land on his agreement to pay the note. He did not pay the note. His creditors, the orators, attached and undertook to levy executions on his equity in the three-eighths of the land. Meantime the mortgagee foreclosed the mortgage; and she had obtained a divorce from her husband. The orators paid three-eighths of the mortgage debt, and she five-eighths of the same, to redeem the premises from the foreclosure. The orator's levies on the three-eighths proved ineffectual to convey the land, through the officer's failure seasonably to return the executions for record. The wife brought a suit against her former husband to recover what she had been obliged to pay to redeem her land from the foreclosure of the

mortgage, obtained judgment, and levied the execution on part of the three-eighths. The orators obtained a deed from the former husband of his interest in the three-eighths of the land, and brought a bill to compel the wife to refund to them the whole or a part of what they had paid to redeem the three-eighths from the foreclosure of the mortgage. The bill was dismissed; the court holding that, originally the husband was a surety for the wife's debt, but when she conveyed to him three-eighths of the premises on his agreement to pay the whole mortgage debt, their relations changed, he becoming the principal, and she the surety for the payment of that debt; and as such surety she would have had the right to have been subrogated to the mortgagee's rights, under the mortgage against the three-eighths for what she had paid to redeem her five-eighths from the foreclosure of the mortgage; and could have compelled in that way the orators, who by their levies, if valid, had only succeeded to the husband's rights in the three-eighths to have paid the whole mortgage debt; and she had accomplished, in effect, the same result by levying her execution on a portion of the three-eighths. It was found that the orators were affected with notice of the equities existing between the husband and wife in regard to the payment of the mortgage debt; and that by the levies of their executions on the three-eighths, they only succeed to his right to the same as against the wife.

In the case at bar, the orator, before the levy of its execution on the Rochester property, was notified that Wright's Bethel property, to which the defendants Cushing & Co. had succeeded, occupied the relation of a surety for the payment of the Pierce mortgage debt. Hence, in equity, by the levy it would only succeed to the rights of the partnership, or of Bugbee in the Rochester, or partnership property. Bugbee had received a conveyance of the same, charged with the payment of the Pierce debt. If Pierce had foreclosed the mortgage on the Rochester property, and the partnership or Bugbee had redeemed, they could not keep the debt on foot against the Bethel property. Such redemption would have been a payment of the debt by the principal. If they had failed to redeem, and Pierce had taken the Rochester property, it would have been an extinguishment of the debt as to him to the

extent of the value of the property. The property at the time the orator made its levy was appraised at enough within,three or four dollars to pay the mortgage debt exclusive of the costs of foreclosure, and with the costs of foreclosure within about forty dollars. If the orator is allowed to have the same rights of the partnership, or of Bugbee after he had taken the conditional conveyance of the Rochester property from Wright, and no greater, its payment of the Pierce mortgage was an extinguishment of it, except so far as it had the right to call upon Cushing & Co. for contribution thereto, *pro rata*, in proportion as they were joint owners with the orator of the Rochester property. According to the doctrine announced in *Stevens et al.* v. *Goodenough, supra,* this would be the orator's relation to the mortgage debt and the Rochester property. We think the doctrine there announced is supported by authority and well-recognized equity principles. Ordinarily, a levying creditor, who takes an equity of redemption when he pays that proportion of the mortgage which rests upon the equity taken by him, pays his own debt, and has no right to keep it on foot against any one. The orator attempted to evade this result by treating in making its levy, a part of the mortgage debt as resting on the Bethel property. We know of no law which would justify a levy made in such a manner. The Bethel property was not included in the same mortgage with the Rochester property. The statute requires the levying creditor to levy upon the whole, or an undivided fraction of the equity of redemption subject to the whole mortgage debt resting upon it. The appraisers, who under the statute appraise the premises and the mortgage chargeable thereon, are required to be freeholders of the town where the land lies, and have nothing to do with lands outside the limits of such town, and especially lands not included in the mortgage. If the levying creditor causes the mortgage debt to be estimated at less than it really is, the debtor may not complain. *Perrin* v. *Reed,* 35 Vt. 2; *Slocum* v. *Catlin,* 22 Vt. 137. Nor ought the creditor thereby to gain an advantage. If he elect to take the equity of redemption knowingly, more heavily encumbered than is stated in the levy, for the purpose of obtaining an advantage, when he is obliged to pay the whole mortgage debt to

save his equity of redemption, he is in no position to ask a court of equity to keep the debt on foot rather than to treat his payment thereof as an extinguishment of it by the principal. But the orator suggests that the court may hold its levy void, because its officer stated the amount of incumbrances resting upon the premises at too small a sum ; and claims that inasmuch as it has paid the whole mortgage debt, it should be subrogated to all the rights Pierce had to enforce its payment. So far as appears, the orator was fully aware of all the incumbrance resting on the Rochester property, and did not make its levy thereon under any mistake of fact. Knowing all the facts, it made just such a levy as it was advised. It must either take the place of a levying creditor, and so have the right to redeem the Rochester property from the foreclosure of the Pierce mortgage, or the place of an interloper and volunteer in the payment of that mortgage. If it occupies the former position, its payment of the mortgage debt was an extinguishment of it to the extent it was owner of the equity of redemption. To the extent Cushing & Co. were owners in such equity of redemption, they have already contributed to the payment of that debt. If it elects to take the place of a volunteer, its payment was equally an extinguishment of it as to all parties. As already suggested, if it be content to abide by its levy, we do not see how any of the defendants can complain. Nor is any fact suggested which would give the orator a valid, legal ground for asking to have its levy set aside or reformed.

The result is, the *pro forma* decree of the chancellor is affirmed as to all parties, but without additional costs in this court to the parties confessing the bill.