GEORGE E. MARTIN, Exr. and Trustee, *et al.*, FOR AN OPINION.

PROVIDENCE—FEBRUARY 2, 1903.

PRESENT: Stiness, C. J., Tillinghast and Rogers, JJ.

(1) *Wills. Trusts. Payment of Debts. General and Specific Legacies. Subrogation.*

Testatrix left her estate in trust for the benefit of her son for life, and after his death to his children, naming said son as residuary legatee and devisee. By a codicil testatrix directed the trustee to pay the indebtedness of her son to the X bank, provided said trustee receive from said bank the shares of stock of the Y. Co. held by said bank as collateral to said indebtedness, evidenced by a note. Prior to the execution of the codicil testatrix had guaranteed the payment of the note to the bank.

At the time of the execution of the will testatrix was not possessed of property much, if any, in excess of the amount required for the general and specific devices and legacies of the will and to pay debts. At the time of the codicil testatrix's estate had been reduced, and at her death it was still further reduced, and consisted, besides the real estate and personal property specifically bequeathed, of other personal property to an amount somewhat in excess of that required to pay debts and funeral expenses, but not enough to pay general pecuniary legacies. Upon the question out of what funds to pay the indebtedness to the X. bank:—

1

*Held,* that the clear intent from the language of the codicil, reinforced by the scheme of the will, was that the trustee should take up the note, receive the collateral, and apply it by way of subrogation to reimburse her estate so far as sufficient.

*Held,* further, that the word *trustee* must be construed to mean *executor.*

(2) *Trust Estates. Life Tenant and Remainder-man. Payment of Taxes.*

By a clause of the will testatrix devised a farm in trust, the trustee to collect the income and, after paying taxes and expenses, to pay over the residue to her son, provided that the son might have the privilege of living on said farm in lieu of income therefrom:—

*Held,* that the taxes and repairs should be paid from the income, or, in the event of the son living there, by him.

(3) *Taxes. Trust Funds. General Administration.*

By the will the estate was divided into several trust funds:—

*Held,* that the cost of general administration, including proving the will, paying debts, and transferring legacies (not including legacy or succession taxes), must be borne by the estate as a whole, but that each trust fund should be taxed separately and pay its own tax and expenses of management.

(4) *Wills. Probate Law and Practice. Order of Liability for Payment of Debts.*

Where the will does not make the debts of the estate chargeable upon any particular part thereof, the personal estate is primarily liable for the payment of the indebtedness, in the following order:

1. General or residuary personal estate.
2. General legacies and devises, contributing ratably *inter se.*
3. Chattels and real estate specifically bequeathed and devised, contributing *pro rata.*

(5) *General and Specific Legacies and Devises.*

General and specific legacies and devises defined, and those in the case at bar discussed.

(6) *Residuary Estates. General and Specific Legacies.*

Where the residuary estate is more than sufficient to pay debts, the general pecuniary legacies of a will are to be paid out of the residuary estate, if sufficient; if not, in proportion.

Neither the income nor any portion thereof of a specific bequest can be applied towards payment of general legacies.

CASE STATED FOR AN OPINION.

ROGERS, J.   This is a petition in equity under chapter 240, section 24, Gen. Laws R. I. for an opinion, preferred by George E. Martin, executor and trustee, and by Herbert Winsor

Mowry, Walter Scott Mowry, and others, devisees or legatees under the will of Amey Mowry of Providence, deceased, for the construction of certain clauses thereof, and of the codicil thereto.

(1)    It appeared that the testatrix died at Providence, October 12, 1900, leaving a last will dated September 25, 1894, and a codicil thereto dated October 20, 1898, which said will and codicil were duly admitted to probate November 7, 1900, and said Martin was duly appointed as executor and trustee thereunder, and is now acting as such; that said Herbert Winsor Mowry and Walter Scott Mowry are father and son, and son and grandson respectively of the testatrix, and her sole lineal descendants living at the date of her will and at the time of her death; that said will contained a dozen separate devises and bequests, some being general and some specific. The residuary clause was as follows: "Fifteenth: All the rest and residue of my estate I give, devise and bequeath to my said son, to him, his heirs and assigns forever, including all my household furniture, ornaments, books, pictures and utensils." The bulk of the testatrix's property was given by a series of devises and legacies to said Martin in trust for her said son's benefit for life, and after his death to said son's children or their lineal descendants, with ulterior gifts in certain contingencies over to certain persons, or charitable institutions, mostly the latter. The only purpose apparent in breaking the aggregate amount of the legacies for the benefit of her son up into numerous separate trusts was to distribute the ulterior gifts, should they ever take effect, among a large number of objects, mostly charitable institutions.

The codicil directed the trustee, in the words thereof, "as soon as reasonably may be after my decease to pay the indebtedness which my son Herbert Winsor Mowry now owes, or may then owe to Jewett City Savings Bank, provided that said trustee and his successors receive from said bank the shares of the capital stock of Slater Cotton Company of Pawtucket, Rhode Island, now or then held by said bank as collateral to said indebtedness."

It further appeared that on September 25, 1894, the time of

the execution of said will, said testatrix was seized and possessed of no real estate other than the homestead estate and the farm in Cranston mentioned in said will, nor did she acquire any other real estate, but died seized and possessed of said homestead and said farm; that at the time of the execution of said will, in 1894, the testatrix was possessed of certain personal estate detailed in the petition, together with money and other personal property aside from that specifically bequeathed, to an amount probably sufficient to pay the pecuniary legacies named in the 4th, 5th, 6th, 7th and 10th clauses of said will; that at the time of the execution of said will the testatrix was not possessed of property much, if any, in excess of the amount required for the general and specific devises and legacies of said will and to pay debts; that thereafterwards on account of a prolonged illness (covering a period of years from the date of said will till the time of her decease) the property of the testatrix was materially reduced so that at the time the codicil was executed in October, 1898, said testatrix was possessed of considerably less than when said original will was executed in September, 1894, and at the time of her death her said property had been still further reduced, and consisted besides said homestead and farm, and certain personal property specifically bequeathed, of other personal property not specifically mentioned in said will, to an amount somewhat in excess of that required to pay debts and funeral expenses, but not nearly enough to pay the general pecuniary legacies; that the testatrix knew the condition of her property at the time said will was executed and also when said codicil was added thereto; that the indebtedness of Herbert Winsor Mowry to the Jewett City Savings Bank, mentioned in said codicil, had been incurred some years prior to October, 1898; that the capital stock of the Slater Cotton Company then and now held by the said bank as collateral security for the payment of the note of Herbert Winsor Mowry was at that time and now is the property of said Herbert Winsor Mowry subject to the rights of said bank as pledgee, said stock having been acquired by him by will from his father, who died in 1889, and having been by said Herbert Winsor Mowry pledged as collateral as aforesaid; that said shares of stock

stood on June 10, 1891 and have down to the present time
stood and now stand upon the books of said Slater Cotton Com-
pany in the name of the Jewett City Savings Bank of Jewett
City; that sometime shortly prior to the time of the execution
of said codicil said bank had demanded further security for the
payment of said note of Herbert Winsor Mowry, and that the
testatrix, his mother, had endorsed said note or guaranteed the
payment thereof, thereby rendering her and her estate liable
for its payment; that for the trustee to pay said indebtedness
of Herbert Winsor Mowry as directed by said codicil, will take
well towards one-half of the entire estate in his hands as trus-
tee, and that the amount applicable to the general legacies
would be entirely inadequate to pay said indebtedness unless
some or all the legacies given in paragraphs 9, 11 and 13, to
be hereafter considered, shall be held to be general and not
specific; that at the time said will was executed in 1894 said
Herbert Winsor Mowry was quite heavily indebted through
recent business losses, but when said codicil was added in 1898
a very large percentage, if not all, of these claims against him
outside of said claim of the Jewett City Savings Bank had be-
come non-enforceable through the operation of the statute of
limitations.

The opinion of the court is sought upon several questions some
of which are involved with others relating to the marshaling of
the decedent's estate for the payment of debts and the satis-
faction of legacies.   We shall, therefore, answer the questions
deemed necessary to be answered, in such order as appears to us
most logical and convenient.

The gist of the petitioners' first and second questions stripped
of some of their ramifications to be considered later, practically
amounts to this:—Out of what funds is the indebtedness of
Herbert Winsor Mowry to be paid as directed in said codicil?

In our opinion it should be paid out of the collateral so far as
the same will go.   This seems to us to harmonize with the in-
tention of the testatrix, gleaned not alone from the expressions
used in the codicil, but also from the scheme of the whole will
and the circumstances existent at the time of the making of the
codicil.

When the will was made in 1894 the chief object of the testatrix's bounty was naturally her only son; but it is noticeable that that bounty was carefully restricted to the personal enjoyment of that son and that his creditors were studiously excluded from any benefit thereunder, for the son's enjoyment was restricted to the income alone except as to the residuum, the residuary amount of the estate under the will being little or nothing, and the son's interest in the income was to be forfeited in case of his alienation, encumbrance or anticipation of said income, or any part thereof, or if by reason of his insolvency or bankruptcy, or if by any attachment, levy or other proceedings by creditors or other cause whatever, said income or any part thereof should, or, but for the proviso now being mentioned would become vested in or payable and pass to or for the benefit of any person other than her said son.   The testatrix at that time clearly intended that none of her estate should be applicable to the payment of her son's debts.   After making her will and before making her codicil she had put herself into different relations to her son's indebtedness or a part thereof, by guaranteeing as further security the payment of his indebtedness to the Jewett City Savings Bank, for the payment of which indebtedness her son had already given the bank certain Slater Cotton Company stock as collateral security.   Her son's debts to said bank had thus become *her* obligation, and if he did not pay it she would be obliged to do so.   Knowing, as she did, that if her said son's note thus guaranteed by her, was not paid by him during her lifetime, it would be a liability upon her estate, which, like other debts and liabilities of her estate, would have to be liquidated before her estate could be settled, she took steps in her codicil to protect her estate and to provide how that note should cease to be binding upon it.   Her purpose in making her codicil was not to bestow more bounty upon her son, but, as far as possible, to protect her estate from the loss he had probably put upon it.   The clear intent from the language of her codicil, reinforced by the scheme or structure of her whole will, was that the trustee, or rather the executor under her will, for the same person was both executor and trustee, should take up the note, receive the collateral, and apply it to reimbursing her estate so

far as sufficient. In other words her estate was to be subrogated to the rights of the bank, for though she was bound to pay the bank if her son did not do so, yet as against her son he would be her debtor as she would succeed to the rights of the bank.

In *Dean* v. *Rounds*, 18 R. I. 436, 446, this court said: "Subrogation applies where one party pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter." In *National Bank* v. *Cushing*, 53 Vt. 321, 326, the court said: "It is only in cases where the person paying the debt stands in the situation of a surety or is compelled to pay in order to protect his own interests, that a court of equity substitutes him in the place of the creditor as a matter of course, without any special agreement. A stranger paying the debt of another will not be subrogated to the creditor's rights without an agreement to that effect." See also 24 Am. & Eng. Ency. of L. 194, note 5, and cases cited.

It has been urged that to construe the codicil thus, much must be read into it that is not there, and it is contended that the debt must be paid by the trustee or by her estate, and that the Slater Cotton Company stock pledged as collateral must be surrendered to the son, to whom it would belong if the note was paid. We fail to see any reasonableness in such a view. Had the testatrix contemplated the delivery of the stock to her son released from all claim by her estate by way of subrogation upon it, it would have been very easy to have said so. Her not saying so, but providing that it should be received by her trustee, is a strong indication that her purpose was that it was to be received as any other guarantor paying the note would have received it, viz., by way of subrogation. Should her son have paid the note he would have received the collateral upon such payment, and if her estate pays it out of the collateral and a surplus thereof remained after such payment, the son would be entitled to such surplus. If the Slater Cotton Company stock is not sufficient to pay the bank in full, then the testatrix's estate must pay the balance due, the same as would have been the case had there been no collateral, for the

testatrix was guarantor for the payment of her son's whole indebtedness to the bank.

While the consent of the son in reducing to money the collateral, to the surplus of which over and above what is necessary to pay the note it secures he would be entitled, would, doubtless, aid the trustee, yet the assent of the son is not necessary in effecting the subrogation.

The codicil provides that the *trustee* shall pay the debt of the son therein referred to, but there are at least eight different trust funds raised under said will, and though one person is made trustee of the several trust funds, a different person with equal propriety might have been made trustee of each fund. No particular trust fund is charged with the payment of said indebtedness, and inasmuch as the person named as trustee of all the several trusts is also named as executor, whose duty it ordinarily would be to see to the payment of the debts of the estate, the words of Durfee, C. J., in *Boardman, Petitioner,* 16 R. I. 131, 142, 145, are applicable here: "There is no stereotyped rule for administering testate estates. Every such estate should be so administered, if possible consistently with the law, as to carry out the purposes of the testator, as those purposes appear from the will interpreted as a whole in the light of the circumstances in which it was made. The same persons are executors of the will and trustees under it, and it seems to. us that its obscurity arises in part from the fact that the draughtsman of the will has not always observed the distinction between their capacities, but has sometimes confused and intermixed them so that it is impossible to discern clearly where the functions of the executors were intended to end and those of the trustees to begin. . . . It is the duty of a court in construing a will to bear in mind the circumstances under which it was made, so as to look at it, as far as possible, from the testator's point of view." There being no purpose that we can discover in having the trustee do what the executor is in a very much better position to do, we are of the opinion that the word trustee was inadvertently used instead of the word executor which was intended, and that therefore

the word trustee as used in the codicil must be construed as meaning the executor.

The foregoing seems to us to fully answer the first two questions propounded to us unless indeed the collateral should be insufficient to pay the guaranteed indebtedness in full, and inasmuch as the indebtedness not met by the collateral would be like any other debt of the testatrix the fund from which it would be paid will be considered later on when considering the marshaling of the decedent's estate for the payment of debts.

(2)    To the third question as to whether the repairs and taxes on the Cranston farm shall be paid during the life of Herbert Winsor Mowry by the trustee under testatrix's will, or by said Herbert Winsor Mowry, we would say that in and by the second clause of said will which disposes of said farm it is expressly provided that "said trustee shall receive and collect all the income arising therefrom and after paying all sums necessary for taxes and expenses and all such other sums as may be required for the proper care and management of said trust property and for the execution of the trusts hereby created to pay over the residue of said income at reasonable periods to my son Herbert Winsor Mowry for his own use during the term of his natural life." Said second clause further provides that "Said trustee may allow my said son to live on my farm in the town of Cranston and so discharge his trust as to any income therefrom so long as my said son has not lost or forfeited the same." The testatrix's directions seem to be very explicit that the taxes etc. are to be paid out of the income of said farm, and that only the net income shall go to her son. The only question, therefore, that can possibly arise is in case the son himself should live on the farm as he is allowed to do. Even then, however, it seems to us the son's living there is only to be in lieu of the net income and that the son must pay taxes, repairs, etc. on said farm estate.

The son under said clause takes an equitable estate for life in said farm subject in certain contingencies to forfeiture. Gen. Laws R. I. cap. 48 § 8, provides that "in case of a life estate, the interest of the tenant shall first be liable for the

tax." That is a law for the protection of the State, but the testatrix could have made other interests first liable, as between the various interests in her estate, and the State would not have cared provided the taxes were seasonably paid. The testatrix made no express provision that some other than the life estate should be first liable for taxes and repairs, and it is a well-settled principle of law that as between life tenant and remainder-man, the life tenant is liable for taxes and repairs. *Williams* v. *Herrick*, 18 R. I. 120, 123, and cases cited.

In the case of a tenant for life of land, it is the duty of the trustee to see that the equitable tenant for life, in rightful possession of the estate pays all rates and taxes. 2 Perry on Trusts, 4th ed. § 554.

Our opinion is that taxes and repairs on the Cranston farm are to be paid out of the gross income thereof; and if said farm is occupied by said Herbert Winsor Mowry they shall be paid by him as a condition of such occupancy.

(3)    The ninth question propounded to us is so similar in character to the one just answered that we will consider it now. That question is as follows, viz.: "How are the taxes and expenses of administration of the various trust funds to be paid? Should each trust fund be taxed separately and be charged with its proportion of the total cost of administration?"

In *Pearson* v. *Chace, Ex'r.*, 10 R. I. 455, a testator gave to his wife the dividends and income of certain shares of bank stock during her natural life, or so long as she remained his widow, and in lieu of dower, the reversionary right being in his three daughters, who were also made his residuary legatees and devisees. It was held that the gift was one of income and not an annuity, and that the wife, therefore, was liable to pay the taxes upon the stock, so long as she received the income from it. The rule in case the gift constitutes an annuity is different. In the case last above cited a gift of an annuity for life, and a gift of the income of certain property for life were defined and distinguished, and we are clearly of the opinion that none of the trusts in the will of the testatrix in the case at bar constitute an annuity in contradistinction to a gift of income.

In *Holcombe* v. *Holcombe*, 29 N. J. Eq. 597, where a fund was directed by a testator's will to be invested by executors, the interest payable annually to one for life, the court decided that the fund itself was taxable in the hands of the executors, and they have the right to retain the tax out of the interest. Van Syckel, J., in delivering the opinion of the court, after stating that in the case of a tenant for life of land it is the duty of the trustee to see that the equitable tenant for life in rightful possession, pays all taxes and rates, and that it is a rule of general, if not of universal application, that it is incumbent upon a tenant for life to pay all taxes upon the lands subject to the tenancy during his life, he being entitled to the enjoyment of it only during his lifetime, and being bound to transmit the estate as he received it, uses this language, page 601, viz.:—"Upon principle, the same rule should be applicable to an investment by an executor, under the directions of a will, for the benefit of another for life. So long as the life tenant enjoys the entire produce of the fund, she should be required to keep down the taxes upon it; otherwise the fund itself must become impaired, and the entire burden thrown upon those who take the fund at her death. If she had absolute ownership in the fund, she would have the taxes to pay, and there seems to be no reason why she should not pay the taxes during such period as she is entitled to the entire use and benefit of it." For a most copious collection of the authorities on this whole subject see note to said case, page 597.

In answer to the ninth question we are of the opinion that each trust fund should be taxed separately and pay its own tax. In regard to the latter portion of the question, we think that the cost of general administration, that is the expense of proving the will, paying the debts and transferring the legacies (but not including legacy or succession taxes, if any, which come out of the respective devises or legacies) must be borne by the estate as a whole. After the executor has paid the trust funds over to the trustee, the executor as such, has nothing more to do with the estate, his duties then ceasing. In this case where the same person is both executor and trustee, when the trustee as such receives from the executor the

respective trust funds, then it becomes the duty of the trustee thereafterward to pay the expense of managing the respective trust funds out of the respective trust funds, each fund being kept as separate as though each fund had a different person for trustee.

As questions four, five and six relate to the duty of the trustee in case of the death of persons still living, or of the happening of forfeitures under conditions that may never arise, we do not feel called upon to answer them until they cease to be academic and become practical questions. Should they ever become practical questions in the administration of the trusts under this will, application may then be made for their determination.

(4)     The seventh question propounded, is: "Out of what fund shall the debts be paid? Can any portion of the income from any of the funds or property specifically bequeathed in trust be used to pay debts if the testatrix at death had enough property not specifically bequeathed to pay her debts?"

It is provided in Gen. Laws R. I. cap. 218, §§ 1 and 2, that the estate real and personal of every deceased person shall be chargeable with the expenses of administering the same, the funeral charges of the deceased and the payment of his just debts; that the personal estate shall stand chargeable for such expenses, charges and debts, in the first instance, and the real estate for all the same which the personal estate shall be insufficient to satisfy, excepting as thereinafter provided, or unless the deceased has otherwise directed by his last will and testament. Under such statute provisions the entire estate is liable for the payment of debts if required, and will be applied whatever the will, being designed for the benefit of creditors. Where, however, the whole estate is not required for the payment of debts, it is competent for the testator to make the real estate or parts of it primarily liable in relief of the personalty. *Woonsocket Institution for Savings* v. *Ballou,* 16 R. I. 351, 353.

The first clause in the will at bar is as follows, viz.: "I direct that my just debts and funeral expenses be paid out of my estate." We fail to find in the will any indication of an

intention on the testatrix's part to charge her real estate with the payment of debts in exoneration of the personal property therefrom, and it will be seen that under this will the debts of the testatrix are not expressly made chargeable upon any particular part of her estate. Although at the present day statutes in practically all jurisdictions where our system of jurisprudence obtains have had the effect of rendering all the estate of a deceased person assets for the payment of his debts, and liable at law to the claims of his creditors, yet courts of equity in administering the estates of decedents have worked out an order of liability of the different funds, which still obtains where the statutes do not expressly abrogate it, and which governs and regulates the relative rights of the representatives, heirs, legatees and devisees of decedents. 19 Am. & Eng. Ency. of Law, 2nd ed. 1300. Our statute (Gen. Laws R. I. cap. 203, §§ 25 and 26) under the circumstances of the present case do not abrogate that order, and that order of liability of the legatees and devisees as amongst themselves is what we understand the petitioners desire our instructions upon.

As the will in the case at bar, in our opinion, shows no intention on the part of the testatrix to exonerate the personal estate from liability for debts, the testatrix's personal estate in contradistinction from her real estate is primarily liable for the payment of her debts. *Potter* v. *Brown*, 11 R. I. 232, 234; *Calder* v. *Curry*, 17 R. I. 610, 616; *Gould* v. *Winthrop, et al.*, 5 R. I. 319, 321.

The general rule is that the general or residuary personal estate constitutes the natural and primary fund for the payment of the testatrix's debts. 19 Am. & Eng. Ency. of Law, 2nd ed. 1300.

The next class of property liable for the testatrix's debts in the case at bar comprises general legacies and general devises, both standing on a footing of equal liability and contributing ratably *inter se*. 19 Am. & Eng. Ency. of Law, 2nd ed. 1312 and cases cited.

Last in order of liability of property owned by the testatrix for the payment of debts are chattels specifically bequeathed

and real estate specifically devised, without being subjected to a testamentary charge of debts. Devisees of specific real estate and legatees of specific chattels are generally considered as being in equal degree the object of their testator's bounty, and conversely the property given them is all equally liable for the testator's debts; consequently when it becomes necessary to resort to assets thus given, the general rule is that the specific legacies and devises must contribute *pro rata*, the measure of liability being the value of the respective properties at the testator's death. *Farnum* v. *Bascom*, 122 Mass. 282, 285; 19 Am. & Eng. Ency. of Law, 2nd ed. 1313 and cases cited.

Of course each class of assets must be exhausted before resorting to the next class. Thus, the whole of the general or residuary personal estate must be exhausted before resorting to the general pecuniary legacies, and if the whole of that class is not required for the payment of debts, all of that class must contribute *pro rata*. If all of that class is insufficient to complete the payment of the debts in full, then resort will be had to specific legacies and specific devises, both falling within the same class, and all specific legacies and specific devises contributing *pro rata*.

(5)   To apply the above rules it is necessary to define the character of the several gifts under the will so as to determine to what class they respectively belong. All legacies other than that of the residuum are either *general* or *specific*. A general legacy is one which does not necessitate delivering any particular thing or paying money out of any particular portion of the estate. Sch. Ex. & Ad. 2nd ed. § 461. "A specific legacy," said this court in *Dean* v. *Rounds*, 18 R. I. 436, "as the term imports, is a gift or bequest of some definite specific thing, something which is capable of being designated and identified."

The gifts in the 4th, 5th, 6th, 7th and 10th clauses of this will are clearly general, or general pecuniary, legacies as termed by some writers, being respectively gifts of stated sums of money, without specifying any distinctive money in contradistinction to any other money of like amount.

The real estate consists of the farm in Cranston, and the homestead, the devises of both of which we think are specific. Should any question be made as to the description of the Cranston farm coming under the words "all the real estate of which I shall die seized, possessed or entitled and wherever situated (excepting however my homestead estate hereinafter mentioned)" in clause 2, it seems to us clear that the intent of the testatrix that her son was to have the use and income of the farm for life is manifested by the last sentence of clause 2, where the son may be allowed to live on that farm in lieu of having the income thereof, and after his death the farm is to be sold and the proceeds to go to his lineal descendants if any, and, if none, then to the ulterior donees. The intent of the testatrix is the prevailing consideration, and we are of the opinion that the devise of the farm was a specific devise.

The homestead is also a specific devise, or more properly, perhaps, a specific legacy, for the trustee is directed to sell it as soon after the testatrix's death as reasonably and favorably may be done and to invest the proceeds thereof for the benefit of her son and to pay him the income thereof semi-annually during his lifetime and after his death to pay the principal to certain specified persons or institutions. What is practically given is the use and income of the homestead, or rather of the proceeds thereof. The property given is specifically designated and set forth, viz., the income of the proceeds of the homestead to her son, and the principal to the other donees indicated in the 8th clause of her will. "It is suggested," said Devens, J. in *Farnum* v. *Bascom*, 122 Mass. 282, 286, "that the use and improvement of a lot of land is a gift indefinite in amount, dependent on its value after many deductions, and therefore not specific. This is unimportant. All the money which may be in a bag described, or which may be to my credit at a certain bank, or which I may recover in a certain action at law, is a specific legacy, although the amount is uncertain." The contention that the homestead goes to Herbert Winsor Mowry under the residuary clause and as such is primarily liable for the payment of debts does not seem to us to be well founded. The intent of the testatrix that the proceeds of the homestead

shall be a specific legacy is clearly manifested, it seems to us, and therefore in our opinion, is a specific legacy.

The ninth clause of the will is a legacy of three 'notes of $5,000 each made by the Slater Cotton Company of Pawtucket, and the eleventh clause is a bequest of one note of $12,000 made by the Ashland Cotton Company. Though the testatrix at the time of making her will owned such notes yet at the time of her death said notes had been reduced by payment to one half or more of the original amounts, respectively. Under the circumstances of this case we are of the opinion that the notes of the Slater Cotton Company and of the Ashland Cotton Company held by the testatrix at her death were specific legacies but only for the amounts reduced by payments. The respective notes would belong to the respective legatees, even if they had been reduced by payment, but there would not be any claim, on account of such reduction, against the general estate. As long as they can be identified, the legatees may have them; but the legatees receive them in the condition in which they were when the gift takes effect by the death of the testatrix. The notes were the essential things; if the money due thereon had been collected and invested in a new form, the legacy would have been adeemed, as that which was given would have ceased to exist. *Farnum* v. *Bascom*, 122 Mass. 282, 286.

The legacy given in the twelfth clause of the will is two hundred and thirty shares in the Ashland Cotton Company, and in the thirteenth clause the legacy is "my stock in the Phenix National Bank in said city," *i. e.*, Providence. At the time of making her will the testatrix owned two hundred and thirty shares in the Ashland Cotton Company, and ninety-five shares in the Phenix National Bank, both of which amounts of said stock she continued to hold throughout the remainder of her life and held at her death.

The description of the Phenix National Bank stock in the thirteenth clause in our opinion constitutes the testatrix's ninety-five shares in that bank a specific legacy. Had the testatrix said *all* my stock in the Phenix National Bank there could have been no question; but the word *my* clearly seems

to us to indicate the testatrix's intent to designate all the stock in the Phenix National Bank standing in her name. See 1 Roper on Legacies, s. p. 204.

The legacy in the twelfth clause of two hundred and thirty shares in the Ashland Cotton Company, although not described by the testatrix as my (her) two hundred and thirty shares, seems to us to be a specific legacy. It is true that the law does not favor specific legacies, and that where stocks, bonds and other securities are disposed of by the will, but it does not designate them as composing a part of the testator's estate and the legacy may be satisfied by delivering to the legatee any securities of the kind and the value or amount specified a preponderance of authority favors it being a general legacy, though the testator owned securities of the kind specified and corresponding exactly to the number of shares or amount bequeathed. 18 Am. & Eng. Ency. of Law, 2nd ed. 713. The authorities, however, are by no means uniform. 1 Roper on Legacies, s. p. 204–224. The cardinal rule in the construction of wills is to ascertain and follow the intent of the testator, and, inasmuch as wills vary so much in their surrounding circumstances, each will has to be judged largely by its own attendant circumstances. In *Pearce* v. *Billings*, 10 R. I. 102, the testator gave away of certain bank stocks largely in excess of what he owned at his death or had ever owned of such bank stocks. The court decided such legacies were general and not specific, and that the number of shares given away merely furnished a standard of measurement of the amount of a pecuniary gift, which was to be fixed by the value of the stated number of shares at the time the legacies would become payable, viz., a year after the testator's decease, an appraisal then to be made. Undoubtedly the fact of the testatrix having an odd number of shares of the Ashland Cotton Company at the date of her will and at her death, exactly corresponding with the number given away, was a circumstance to be taken into account, and that taken in connection with all the circumstances of this particular will satisfy us that the testatrix intended that the legatee under the twelfth section was to have that particular stock. In our

opinion the legacy under the twelfth section was a specific one.

In regard to the second part of the seventh question, whether any portion of the income from any of the funds or property specifically bequeathed in trust can be used to pay debts, if the testatrix at her death had enough property not specifically bequeathed to pay debts, our answer is in the negative.

In regard to property bequeathed under the fifteenth, or residuary clause, which reads as follows:—"All the rest and residue of my estate I give, devise and bequeath to my said son to him, his heirs and assigns forever, including all my household furniture, ornaments, books, pictures and utensils," it is contended that all the enumerated articles are specific and not general legacies. We do not think so. The general rule is that a residuary legacy is general and not specific and we think it applies in this case. Merely enumerating some of the articles contained in the residuary clause does not alter the character of the legacy. See *Le Rougetel* v. *Mann, Ex.*, 63 N. H. 472. We discover no intent on the testatrix's part to make such enumerated articles specific legacies and the language of the will militates against it.

(6)    To the eighth question, which alone has as yet remained unanswered, we would reply that as a residuary legatee is entitled only to what remains after all the debts and paramount claims upon the testatrix's estate are satisfied, he cannot call upon either the general or specific legacies or devises to abate in his favor, even if the entire residue be exhausted. If the residuary estate, therefore, is more than sufficient to pay the debts, the general pecuniary legacies, viz., those given in the 4th, 5th, 6th, 7th and 10th clauses are to paid out of the residuary estate, if sufficient, and if not sufficient to pay in whole, then it shall be applied to their payment ratably and in proportion, and the unpaid portions of such pecuniary legacies will abate. Neither the income nor any portion thereof accruing under clauses 2, 3, 8, 9, 11 and 13, relating to specific legacies can, in our opinion, be applied towards the payment of the general legacies.

Some of the questions asked are extremely broad, and the limitations of the various classes of property in meeting the debts are not very clearly defined, but we have given all the instruction, as we understand, now necessary. Should any further instruction, however, become necessary in the administration of this estate, further application must be made.

*Clarke H. Johnson, Walter S. Reynolds, Dexter B. Potter, Cooke & Angell, Arnold Greene, John C. Pegram, Comstock & Gardner, Van Slyck & Mumford, Barney & Lee,* for various parties.