[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Pursuant to Rule 56 of the Rhode Island Superior Court Rules of Civil Procedure, this matter comes before the Court on cross-motions for summary judgment filed by Robert B. Gates and Rhode Island Hospital Trust National Bank ("Appellees" or "Co-Executors") and Beverly J. Kiepler ("Appellant") respectively. The underlying action is an appeal from an order of the Warwick Probate Court that denied the Appellant's petition to remove the Co-Executors of the decedent's estate and overruled the Appellant's objection to the inventory filed by the Co-Executors in 1988.
 Facts and Travel
On August 30, 1987, Magna L. Burt ("Decedent") died testate. Her last will and testament ("Will"), executed on January 22, 1981, appointed Rhode Island Hospital Trust National Bank and Robert B. Gates as Co-Executors of her estate ("Burt Estate").[1] The Appellant is one of ten residuary beneficiaries of the Burt Estate.
To satisfy the requirement set forth in G.L. (1956) § 33-9-1, the Co-Executors filed an inventory of the Burt Estate on June 10, 1988. At that time, the Burt Estate held 2,256 shares of Class A non-voting common stock ("Nyman Stock") in the closely held Nyman Manufacturing Company ("Nyman").[2] Rhode Island Hospital Trust performed the only fair market valuation of the stock on August 31, 1987. The valuation appraised the stock at $383.04 per share. Consequently, the inventory filed with the Warwick Probate Court in June 1988 reflected a total value of $864,138.24 for the 2,256 shares. Following an IRS audit in 1989, the Co-Executors adjusted the total value of the Nyman Stock to $909,958.00 to account for an increase in the value of certain property owned by Nyman. Although the Co-Executors utilized the adjusted valuation of $909,958.00 in preparing the Burt Estate's 1995 tax return, the first amended account dated June 27, 1995 presented to the Probate Court used the $864,138.24 valuation listed in the June 1988 inventory.
Pursuant to the `Tenth' section of the Will, the Decedent directed:
 "If I am the owner of any stock in the Nyman Manufacturing Company at the time of my death, I hereby direct my executors to offer all such stock to said Nyman Manufacturing Company for sale at the lowest price for which they are willing to sell it and to make no sale at any lower price without first offering such stock to said company, this same condition to be imposed upon my trustees if such stock becomes an asset of any trust."
The Co-Executors made only two attempts to sell the stock between August 1987 and October 1995. In October 1989 and August 1993, the Co-Executors offered the shares held by the Burt Estate to Nyman, but both times the company lacked the financial capacity to redeem the stock.
After operating at a loss for the years 1991 through 1994, Nyman's financial plight began to improve after the company hired Keith Johnson as the Chief Financial Officer and Treasurer in August 1994.[3] For the fiscal year ending March 25, 1995, Nyman reported a profit of $1.6 million. The improvement in Nyman's financial situation prompted the company's officers to pursue the redemption of outstanding shares of stock. On August 4, 1995, Johnson sent a written proposal to the Co-Executors to redeem the Nyman Stock held by the Burt Estate for $145.36 per share, yielding a total purchase price of $327,937.00. However, Johnson conditioned the offer on the purchase of all 2,256 shares held by the Burt Estate.
The Co-Executors made no attempt to update the 1987 valuation of the stock but, rather, simply forwarded the Stock Purchase Letter Offer to the residuary beneficiaries. The Co-Executors proffered no advice or opinion as to whether the proposal was reasonable but simply requested a response either approving or rejecting the proposal.
The record before the Court indicates that three beneficiaries responded approving the proposal. Another beneficiary approved of the proposal on the condition that the Burt Estate not bear the financial burden for any transactional fees. Another beneficiary rejected the proposal. The Appellant initially approved the proposal but subsequently revoked said approval on October 18, 1995 when the executors requested an indemnification from each of the beneficiaries before distribution of the net proceeds. The remaining four beneficiaries failed to respond, which, per the terms of the letter from the Co-Executors, operated as an approval.
Because the responses from the beneficiaries demonstrated a lack of unanimity, the Co-Executors petitioned the Probate Court for permission to distribute the shares to the beneficiaries in kind. On October 19, 1995, the Probate Court entertained arguments on the Co-Executors' petition. Much to the Court's chagrin, the parties have represented that no transcript of this proceeding is available. Nevertheless, it appears that it was Nyman's attorney, rather than the Co-Executors, who presented the argument allegedly in support of the Co-Executors request for an in-kind distribution — this in spite of the fact that, one, Nyman had conditioned its proposal on the purchase of all shares held by the Burt Estate and two, that all beneficiaries were not agreeable to a sale of the stock. The following deposition testimony of Robert Gates confirms that the Co-Executors presented little to no argument on their petition before the Probate Court:
 Q [to Gates]: Did you say anything — to the best of your recollection, did you say anything to the Probate Court in the course of the hearing on that petition?
 A [Gates]: Almost nothing, no. [Nyman's attorney] made almost the entire presentation. . . . .
 Q: As executor as of the time of the hearing on that petition, did you feel that you had sufficient information to take a position in Probate Court.
 A: I didn't want to take a position. I didn't want to comment on the valuation. Deposition of Robert B. Gates at p. 93, ll. 10-15, 22-24, p. 94, ll. 2-3 (August 23, 2000).
After the presentation by Nyman's attorney, the Probate Court departed from the request for an in kind distribution contained in the petition, and instead, sua sponte, ordered the sale of all Nyman Stock to Nyman for $145.36 per share yielding a total value of $327,937.00 ("1995 Order"). No beneficiary appealed the Probate Court's Order which directed the Co-Executors to sell the Nyman Stock.[4]
On November 6, 1995, the Co-Executors closed the deal which allowed Nyman to redeem the 2,256 shares for $145.36 per share, and distributed the proceeds in equal shares to each of the ten beneficiaries.[5] On the same day, the Nyman officers issued themselves options to purchase the stock at $145.36 per share.
As evidenced by the $3.5 million profit for the fiscal year ending March 29, 1996, Nyman's financial condition continued to improve under Johnson's leadership. Consequently, Johnson took steps to ready Nyman for sale. Johnson entered into discussions with Van Leer Corporation, a Dutch parent company which owns Chinet, a major competitor of Nyman. On September 29, 1997, Van Leer Corporation acquired Nyman. Pursuant to the terms of the acquisition, Van Leer purchased the Class A stock for $1667.38 per share and the Class B stock for $2167.59 per share, totaling $28,164,735.00.[6]
On January 29, 1998, the Appellant, Pro Se, filed a petition in the Probate Court to remove the Co-Executors from service to the Burt Estate. The petition alleged that the Co-Executors' actions, or more appropriately lack thereof, with respect to the Nyman Stock sale constituted a breach of fiduciary duty that caused waste to the Burt Estate. On March 23, 1998, the Appellant, having secured the assistance of counsel, also filed an objection based on the Co-Executors' failure to amend the 1988 inventory valuation of the Nyman Stock to reflect the adjusted value. On April 16, 1998, the Warwick Probate Court issued a consent order, summarily without explanation, denying the petition for removal and overruling the objection to the inventory.
Consequently, the Appellant timely filed her claim of appeal in probate court on April 23, 1998 and her notice of appeal to the Superior Court on May 13, 1998. Thereafter, the Appellees moved for summary judgment based primarily on a procedural challenge. The Appellant opposed the motion, and also filed a cross-motion for summary judgment on the portion of the appeal related to her objection to the inventory.
 STANDARD OF REVIEW
"Summary judgment is an extreme remedy that must be cautiously applied." Canavan v. Lovett, Schefrin Hartnett, 862 A.2d 778, 783
(R.I. 2004) (citing Johnston v. Poulin, 844 A.2d 707, 710 (R.I. 2004)). "[T]he purpose of summary judgment is issue finding, not issue determination." Weaver v. Am. Power Conversion Corp., 863 A.2d 193, 200
(R.I. 2004) (quoting Saltzman v. Atlantic Realty Co., 434 A.2d 1343, 1345
(R.I. 1981)). When considering a motion for summary judgment, "the court does not pass upon the weight or credibility of the evidence but must consider the affidavits and other pleadings in a light most favorable to the party opposing the motion." Palmisciano v. Burrillville RacingAssociation, 603 A.2d 317, 320 (R.I. 1992). Summary judgment is appropriate "when it appears from a review of the evidence, viewed in the light most favorable to the nonmoving party, that no genuine issue of material fact exist[s] and the moving party [is] entitled to judgment as a matter of law." Goncalves v. NMU Pension Trust, 818 A.2d 678, 682
(R.I. 2003).
"[A] party who opposes a motion for summary judgment carries the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions." Accent Store Design, Inc. v.Marathon House, Inc., 674 A.2d 1223, 1225 (R.I. 1996). "To oppose a motion for summary judgment successfully, a party need only provide the trial justice with evidence that, when viewed in light most favorable to that party, establishes the existence of a genuine issue of a material fact." Sanzi v. Shetty, 2005 R.I. LEXIS 9 (R.I. 2005) (quoting M BRealty, Inc. v. Duval, 767 A.2d 60, 63-4 (R.I. 2001)).
 ANALYSIS
In order to reach the substantive issues raised in the pending cross-motions for summary judgment, the Court must first address the Appellees' procedural challenge to the instant appeal. After discussing the reasons for the rejection of the Appellees' challenge, the Court will proceed to address the substantive arguments raised by the pending motions.
 Procedural Challenge
Section 33-23-1(a) provides:
 "(1) Within twenty (20) days after execution of the order or decree by the probate judge, the appellant shall file in the office of the clerk of the probate court a claim of appeal to the superior court and a request for a certified copy of the claim and the record of the proceedings appealed from, and shall pay the clerk his or her fees therefor. (2) Within thirty (30) days after the entry of the order or decree, the appellant shall file in the superior court a certified copy of the claim and record and the reasons of appeal specifically stated, to which reasons the appellant shall be restricted, unless, for cause shown, and with or without terms, the superior court shall allow amendments and additions thereto."
Relying on § 33-23-1(a)(1) and (2), the Appellees contend that the subject matter of Appellant's current appeal is the same as that previously adjudicated in 1995 and as such, the Appellant's failure to appeal the Probate Court's 1995 Order of sale within the prescribed twenty-day period foreclosed her ability to litigate the issues raised in the underlying petition and subsequent appeal. Consequently, the Appellees argue that they are entitled to judgment as a matter of law, because this Court lacks jurisdiction to entertain the current appeal.
It is well-established that the deadlines set forth in § 33-23-1(a)(1) and (2) are jurisdictional. See § 33-23-1(e); Estate of Griggs v.Griggs, 845 A.2d 1006, 1009 (R.I. 2004) ("Section 33-23-1(e) makes clear that the deadlines in § 33-23-1(a)(1) and (2) are jurisdictional.") "In construing this statute, [the] Court has repeatedly held that this statute is jurisdictional and failure to proceed within the time prescribed cannot be waived, nor can it be overlooked by a sympathetic trial justice." McBride v. Leach (In re Estate of Speight), 739 A.2d 229,231 (R.I. 1999) (quoting Yetner v. Corkery Genealogical, Inc.,706 A.2d 1331, 1332 (R.I. 1998) (quoting Steinhof v. Keefer, 101 R.I. 472,476, 224 A.2d 897, 899 (1966)).
In Kenyon v. Probate Court of West Warwick, 17 R.I. 652, 656, 24 A. 149,150 (1892), the Court articulated the following rationale for the strict enforcement of this jurisdictional limit:
 "In proceedings [involving Probate matters], many persons may be interested in the settlement which is the subject of litigation who are not parties to the appeal. It is for the interest of all who may deal with parties whose titles are affected by decrees of Probate Courts that, after the lapse of some definite time, such decrees shall be final and unimpeachable. After rights have vested by the statute under the decree, the parties to the record cannot confer a right upon any other tribunal to disturb the adjudication which the legislature has made final."
Consequently, the purpose of the definite twenty-day appeal period is to allow for the timely settlement of estates and resolution of disputed property rights not to act as a bar to every cause of action which may arise incident to a given transaction.
Given this policy rationale, the Appellees' attempt to apply the jurisdictional limit to bar the Appellant's objection to the inventory and petition to remove the Co-Executors is misguided. To clarify, the Appellant is not seeking to set aside the Nyman Stock sale effectuated by the 1995 Order. Rather, the Appellant is seeking redress for the alleged misfeasance or malfeasance of the Co-Executors with respect to the administration of the Burt Estate, specifically, the Co-Executors' failure to object to the sale of Nyman stock without an updated valuation and their failure to protest and appeal the sua sponte 1995 Probate Court decision. Although the Co-Executors' conduct related to the stock sale is the primary basis for the Appellant's petition to remove, the resolution of the issues raised in the current appeal would have no effect on the disposition of the 2,256 shares of stock which vested in the Nyman Officers pursuant to the 1995 Order. To follow to its logical conclusion the Appellees' argument that Appelant's pending claim for relief should be barred, a beneficiary who discovers misconduct related to the subject transaction of a Probate Court order or decree on the twenty-first day following its execution would be precluded from filing an action to remove the responsible executors and prevent further damage to the estate. Such reasoning is flawed as it neither protects the estate assets nor hastens a speedy and just resolution of the estate affairs. In the absence of a statutory directive clearly indicating a legislative intent to bar challenges to later discovered fiduciary breaches or irregularities, this Court declines to so expand the scope of the limits prescribed in § 33-23-1(a)(1) and (2).
To remove an estate executor, an aggrieved party may file a petition in the Probate Court pursuant to § 33-18-2:
 "Whenever an executor, administrator, or guardian shall for any cause become incapable of executing his or her trust, or shall neglect or refuse to do the duties of the trust, or shall waste the estate of his or her ward or that on which he or she administers, the probate court, upon petition, and after hearing, may remove the executor, administrator or guardian from office and appoint an administrator or guardian in place of the person so removed, and take such other action as occasion may require."
In the instant case, even assuming the Appellant had timely appealed the 1995 Order to the Superior Court, removal of the Co-Executors would not have been the proper subject matter of that appeal. The object of such appeal would have been to set aside the Probate Court's sua sponte direction to sell the 2,256 shares of Nyman Stock held by the Burt Estate. The Appellant could not have properly invoked the Superior Court's appellate jurisdiction over an issue that was never presented to the Probate Court.
Given these circumstances, the Court rejects the Appellees' argument that the Appellant's failure to challenge the 1995 Order precludes her ability to bring a subsequent, separate action to remedy any waste to the Burt Estate caused by the Co-Executors' alleged misconduct. The Court finds that although the Appellant's removal petition relies on facts related to the 1995 Probate Court order, the underlying petition herein and subsequent appeal raise issues which are separate and distinct from the substance of an appeal that would have ensued from the 1995 Order.
Having rejected the Appellees' procedural challenge to the instant appeal, the Court will now address the remaining substantive arguments presented in the respective cross summary judgment motions. The Court notes that the Appellees have failed to advance a substantive argument in support of their objection to the removal petition. Nonetheless, the Court will evaluate the two substantive claims — removal and inventory objection — to determine whether any genuine issues of material fact exist which preclude the grant of summary judgment.
 Reasons of Appeal
By posting bond with the Probate Court, the Co-Executors incurred the following statutory obligations set forth in § 33-17-1(1):
 "Every executor, administrator and guardian, before entering upon the execution of his or her trust shall give bond to the probate court in any sum as it shall require, with sufficient surety or sureties, and with condition, except as provided in §§ 33-17-3 and 33-17-4, substantially as follows:
 (1) In the case of an executor or administrator with the will annexed:
 (i) To make and return to the probate court, as by law required, a true inventory of all the testator's personal property which, at the time of making the inventory, shall have come to his or her possession or knowledge
 (ii) To administer according to law and the will of the testator, all the personal property of the testator which may come to his or her possession or into the possession of any person for him or her, and all rents and proceeds of real estate which may be received by him or her.
 (iii) To render upon oath true accounts of his or her administration as by law required."
In her Reasons of Appeal, the Appellant requests that this Court enter judgment against the Appellees, jointly and severally, on their bond. The Appellant argues that the beneficiaries are entitled to judgment on the bond, because the Co-Executors have failed (1) to administer the Burt Estate in accordance with the will of the Decedent in violation of §33-17-1(1)(ii); and (2) to provide an accurate valuation of the Nyman Stock in accounts presented to the Probate Court in violation of §33-17-1(1)(iii). The Appellant posits that these violations caused waste to the Burt Estate, and as such, the Court should reverse the ruling of the Probate Court, grant the Appellant's petition to remove the Co-Executors, and order the amendment of the 1988 inventory to reflect the adjusted value of the Nyman Stock.
 Failure to Administer in Accordance with Will
In Hanley v. Alarie, 746 A.2d 125, 127 (R.I. 2000), cited by Appellant in support of her Motion for Summary Judgment, the Rhode Island Supreme Court upheld a trial justice's determination that the executrix of an estate breached her fiduciary duty by failing to determine the fair market value of real property and subsequently selling the property for much less than its actual worth. The Court sustained the trial justice's finding that:
 "a reasonable person, in light of all the facts and circumstances with which [the executrix] was confronted at the time, would have taken some steps to independently verify the reasonableness of the sales price and would not have relied on the opinion of a person having such a potential for self-interest." Id. at 128.
Although Hanley dealt with the sale of real property, Appellant argues that the same rationale applies to the sale of stock in the case at bar. Namely, when the executor of an estate liquidates estate property without first taking reasonable steps to ascertain its fair market value, he is liable for any waste that results.
The Decedent's Will directed the Co-Executors to offer the Nyman Stock
 . . . to said Nyman Manufacturing Company for sale at the lowest price for which they are willing to sell it and to make no sale at any lower price without first offering such stock to said company.
The direction implies that, prior to executing a sale, the Co-Executors would first have had to establish a value for which `they [the Executors] were willing to sell' the stock. However, without performing a valuation coincident with the proposed sale, the Co-Executors lacked sufficient information to determine what would constitute a reasonable price for the Nyman Stock. Contrary to the directions contained in the Decedent's Will, the Co-Executors admittedly made no attempt to update the 1987 valuation, neglected before the Probate Court to even offer an opinion as to an acceptable fair market value, and sold the stock at a value far below that last valuation. Consequently, the Co-Executors' refusal to form an opinion as to the reasonable value of the stock contravened the direction in the Will.
At this point, the Court wishes to address the merits of the Appellees' contention that they should not be held accountable for simply complying with the 1995 Order of the Probate Court directing sale of the Nyman stock — a disposition, they contend, they neither sought, contemplated, nor advocated. The Court would find this argument more compelling had the Co-Executors actually presented some semblance of an argument to the Probate Court in 1995 to advance their request for in-kind distribution. When confronted with the alleged unanticipated order to sell, the Co-Executors interposed no objection to such an order, in spite of their lack of an updated valuation, nor did they request or suggest a continuance to the Probate Court to obtain same. Instead, they delegated the presentation of the argument on their petition to the attorney for the company seeking to purchase the shares pursuant to a separate proposal which the beneficiaries had effectively rejected. The Nyman officers had expressly conditioned the proposed acquisition of the Nyman Stock on their ability to acquire all 2,256 shares of Nyman Stock held by the Burt Estate. Accordingly, an in kind distribution to beneficiaries already on record opposing sale would have been completely adverse to Nyman's acquisition of all outstanding stock. Simply put, the Co-Executors, agreed to allow an adverse party to advocate a position which that party admittedly opposed.
In the absence of a transcript to demonstrate otherwise, the Court deems Appellees' arrangement with Nyman's counsel troubling for three primary reasons. First, the Court is unclear as to why Nyman's attorney was involved in this 1995 petition in the first place when the company was not a party to that Probate Court proceeding. Nor did Nyman and the Co-Executors have an identity of interest. Second, the Court is bothered by the fact that the Probate Court, after hearing an argument presented exclusively by a party with interests adverse to the Burt Estate, sua sponte ordered the sale of the Nyman Stock without either a current valuation of the subject stock or the consent of the beneficiaries. Lastly and most troubling of all is the Co-Executors cquiescence in Nyman's participation in the October 19, 1995 proceeding and their failure to advocate a position contrary to the sale of the stock. For the foregoing reasons, the Court refuses to allow the Co-Executors to seek shelter from liability under the Probate Court's order. Even assuming the Court relied on the value of the stock listed in the June 1988 inventory, the substantial disparity between the listed inventory value of $864,138.24 and the proposed sales price of $327,937.00 should have piqued the concerns of the Co-Executors and prompted further inquiry and/or action on their part.
Accordingly, the Court finds that the price per share contained in the 1995 Order constituted a radical departure from the 1987 valuation of the stock and, as such, is sufficient to demonstrate a prima facie showing of waste. Viewing the evidence in the light most favorable to the Appellant, the Court holds that a material fact remains in dispute as to whether the Co-Executors' admitted inaction caused waste to the estate. Therefore, the Court denies the Appellees' motion for summary judgment as to the portion of the appeal related to the petition to remove.[7]
 Objection to Inventory
The Court will now address the remaining issue in the Appellant's cross-motion for summary judgment, specifically, the Appellant's objection to the inventory. For purposes of the objection to inventory, the parties agree that no disputed material facts remain.
Section 33-9-1 imposes a duty on administrators/executors to file an inventory with the court within ninety days of the decedent's death. Section 33-9-1 states in relevant part:
 "Every administrator and every executor, unless he or she has given bond to pay the funeral charges, debts, and legacies of the testator, shall, within ninety (90) days after his or her appointment or such longer period as may be allowed by the probate court return to the probate court, under oath, a true inventory of all the goods, chattels, rights and credits of the deceased which have come to the knowledge of the administrator or executor, with an appraisement thereof."
"[A]ny mistakes or errors in the inventory may be brought to the attention of the court by the executor or any one else interested in the estate whenever such mistakes or errors are discovered in order that they may be corrected and the inventory amended." Browning v. Liberty,58 R.I. 507, 512, 193 A. 496, 498 (1937). "[A] hearing on the account is not the only time that the question of the accuracy of the executor's inventory can be raised, . . . it may be brought to the attention of the court whenever any alleged error is discovered." Id. at 510-11, 498.
In compliance with § 33-9-1, the Co-Executors filed an inventory of the Burt Estate on June 10, 1988. Based on the August 1987 valuation of the Nyman Stock, the inventory listed the value at $383.04 per share which yielded a total value of $864,138.24. The Appellant petitioned the Probate Court to direct the Co-Executors to rectify the discrepancies between the value of the Nyman Stock listed in the 1988 inventory and the adjusted value of $909,958.00 that resulted from the IRS audit. Specifically, the Appellant argues that the Co-Executors failed to utilize the adjusted value of the Nyman Stock when they presented the Probate Court with the First Amended Account purporting to cover the period from October 8, 1987 through June 2, 1995.
Based on the Rhode Island Supreme Court's holding in Browning that questions as to the accuracy of an inventory may be raised at any time, the Court sustains the Appellant's objection and directs the Appellees to amend the initial inventory. The Court finds that the Appellant has presented sufficient documentary evidence to demonstrate errors not only in the 1988 inventory but on all subsequent documentation which relies on that inventory. Without the aid of the transcript of the Probate Court proceeding, the Court cannot ascertain the Probate Judge's reasoning for overruling this objection. Further, the Court finds nothing in the record to suggest a reason why the inventory should not be corrected to reflect an accurate price for the stock during the relevant time period.
In addition, to ensure that the documentation provided to the Probate Court regarding the Burt Estate is consistent, the Court also directs the Co-Executors to correct the valuation of the stock listed in the first amended account to reflect the adjusted value.
Because there are no material facts in dispute, and the Appellant is entitled to judgment as a matter of law, the Court hereby grants the Appellant's motion for partial summary judgment on the objection to the inventory.
 CONCLUSION
For the foregoing reasons, the Court denies the Appellees' motion for summary judgment. Conversely, the Court hereby grants the Appellant's partial motion for summary judgment on the objection to the inventory. As such, the Court directs the Co-Executors to amend the June 1988 inventory and the first amended account to reflect the adjusted value of the Nyman Stock.
Counsel shall prepare and submit an appropriate order.
[1] Currently, the Burt Estate remains open and under the supervision and control of the Probate Court of the City of Warwick. (Case No. 87-310).
[2] Nyman manufactures paper and plastic products.
[3] Apparently, Johnson specialized in restructuring, rejuvenating, and marketing for sale financially troubled companies.
[4] It should be noted that the Appellant maintains that she did not receive notice of either the 1995 Order or her right to appeal. Although no beneficiary appealed the October 1995 order, there is authority to suggest that the Probate Court's sua sponte order directing sale was in excess of her authority. See Estate of Gervais, 770 A.2d 877, 882 (R.I. 2001).
[5] For reference purposes, in April 1995, the book value of the Nyman Stock was estimated at $180 per share, but the value jumped to $312.02 a share in November 1995.
[6] The acquisition of Nyman by the Van Leer Corporation has spawned numerous lawsuits in both Rhode Island State and Federal Court. Various beneficiaries of the Burt Estate have filed suit against the Nyman Officers. However, the focus of the instant appeal exclusively addresses the Co-Executors of the Burt Estate and their conduct in the administration of that estate.
[7] The Court notes that the Appellant did not seek summary judgment on this portion of the appeal.