Lawrence W. Champlin, *Ex'r vs.*
William E. Powers, *Atty. Gen., et al.*

AUGUST 4, 1952.

PRESENT: Flynn, C. J., Baker, Condon and O'Connell, JJ.

O'Connell, J.   This is a bill in equity for the construction of the will of Arthur Leslie Green, late of the city of Newport, deceased, hereinafter sometimes referred to as

the testator. The complainant is the duly appointed executor under said will and the respondents are the attorney general of the state of Rhode Island and Helen Hill Miller of Charlottesville, Virginia. Both respondents have filed answers, the respondent Helen Hill Miller admitting the allegations in the bill and joining in the prayer thereof, and the respondent attorney general, while neither admitting nor denying the allegations of said bill but putting the complainant to proof thereof, has submitted the rights and interests of the state and its citizens and public to the care and protection of the court. The cause was heard in the superior court on bill, answers and proof, and being ready for hearing for final decree has been certified for our determination in accordance with general laws 1938, chapter 545, §7.

The testator Arthur Leslie Green died December 6, 1949. His will dated August 25, 1945 and a codicil thereto dated September 1, 1945 were duly admitted to probate January 5, 1950 by the probate court of the city of Newport. Both the will and the codicil were apparently written by the testator himself without legal assistance. To properly understand and determine the questions here propounded, it is necessary to quote extensively therefrom.

The pertinent portions of the will are as follows:

"Easton Proprietors' House
Second and Walnut Streets

The Easton Proprietors' House on Walnut Street I wish continued as a Museum. It must be under proper management. The house is so small it could not be shown to more than three people at a time. Children must not be admitted. The people desiring to see it must be chosen by appointment at certain hours on certain day or days. A fee must be charged (fifty cents a person) to keep too many people from applying. Some museums require a written application for a ticket of admission. If the applicant is someone really interested in antique houses and furniture the applicant may be admitted if Mr. Champlin thinks best. The

applicant should apply to Mr. Champlin at the Newport Savings Bank. * * *

* * * The admission fee of fifty cents per person should be divided in two parts, half of which should go to the person showing the house and the other half to be used for the upkeep of the house. * * *

If the funds are not sufficient for preserving the Easton Proprietors' House as a museum then the property must be sold—unless someone could be found to contribute to the fund to help keep the house a museum. Somebody or some organization interested in the earliest houses and their construction, and the earliest furniture existing in Newport, might be found. * * *

When the trustee or trustees have exhausted every effort to continue the Easton Proprietors' House, then and then only the residue of my estate is to be used to assist a worthy young man or men who deserves education. The aid is to *supplement* the person's own efforts. He must have been graduated with honor from a high school or parochial school. He should attend the Rhode Island State University or have won a scholarship at Brown, or some other College. He is to be given some of his clothing, which I have left with Mr. Champlin. He must work in his spare time at his educational institution during its session, and he must work his vacations, securing a job. He must live economically. He must not keep a car. He must not be married, for then he would have to support a family.

The aid is not to be given in a lump sum, but at the beginning of each term is to be given enough to help him in the next term. At the end of each term his report is to be sent to the First Trustee, so the trustee can judge of his progress. If the report is not satisfactory, then the aid is to be stopped. Not more than two men are to be aided at the same time. If the man's standing is not satisfactory then aid is to be stopped, and someone else is to replace him. * * * The supplementary aid shall not exceed $300.00 a year."

"Residue of My Estate

The residue of my estate, with which I hope Mr. Champlin or his successor or successors may find suffi-

cient to establish a Trust Fund to preserve as a Museum the Easton Proprietors' House on Walnut Street, would consist of the price paid for Cranford Cottage, My Home, the furniture which is to be sold from Cranford Cottage (my home on Training Station Road), the Savings Bank account at the Newport Savings Bank on Washington Square, and any other monies I may have after any indebtedness is paid, and possibly other's contributions."

The codicil provides in part as follows:

"The educational aid to the chosen man is not to be regarded as a gift, but as a loan. The Trustee is to keep an account of sums advanced. The recipient is to repay, as soon as he can. The Trustee is to exact a written agreement signed by the recipient. If the recipient is honest the Fund will last longer, and he will feel that he has joined me in making it possible that more should be educated. Others might be interested in the spread of knowledge and might contribute to the Fund."

It appears from the bill of complaint and the testimony in the superior court that the personal property of the testator amounted to $13,140.79. An additional gross sum of $10,000 was received from the sale of the Cranford Cottage, so called, on Training Station Road and the valuation placed on the Easton Proprietors' House on Walnut Street is $3,000.

The uncontradicted testimony of the executor showed that there was not sufficient money in the estate to establish and maintain the Easton Proprietors' House as a museum, as set forth in the will; that the executor had contacted most of the persons mentioned in the will, who the testator suggested might be willing to contribute to the upkeep and support of the museum fund; that in addition he had contacted several historical societies and organizations which he thought might be interested in the preservation of the earliest houses in Newport; and that all such persons and societies had declined to give financial assistance

or take over the operation of the Easton Proprietors' House as a museum.

The bill further sets out that by decree of the probate court of Newport, entered July 13, 1950, the executor was authorized to sell the Easton Proprietors' House for not less than $3,000 by private sale or at public auction to effect a prompt and efficient settlement of the estate in accordance with the provisions of public laws 1945, chap. 1563, section 1.

On the facts as above stated, the executor has asked for instructions on the following questions:

"a. Has Your Orator the power to sell the aforementioned Easton Proprietors' House or is there a specific devise of said House by the aforementioned Will of said Arthur Leslie Green barring Your Orator from selling said House under Chapter 1563 Public Laws 1945 of the State of Rhode Island?

b. Provided Your Orator is empowered to sell said House, should he apply the purchase price to the establishment of the said educational trust?

c. Does said educational trust fall within the category of a valid public trust?

d. Provided said educational trust is not a valid public trust does it qualify as a valid noncharitable trust or should Your Orator apply said purchase price to the residuary estate?

e. Provided no valid trust is possible, must the residuary estate pass under the laws of intestacy of the State of Rhode Island?"

The complainant contends that since the testator has expressly provided that the Easton Proprietors' House *must* be sold in the event there are insufficient funds to maintain it as a museum, and since such contingency has actually occurred, the provisions of P. L. 1945, chap. 1563, section 1, *supra,* do not bar its sale, but apply only where the testator has not indicated his express wish that the property be sold; that the will as a whole indicates the testator's clear intention that, in the event the museum could not be maintained, the educational trust should be established in its place, and that the proceeds from the sale of the house should be

applied to the educational trust; that such educational trust falls within the category of a valid public trust, but that if this court should hold otherwise it should qualify as a valid noncharitable trust; and that if the educational fund is held to be neither a valid charitable nor noncharitable trust, the residuary estate must pass under the intestacy laws of the state of Rhode Island, but only in the event that all trusts have failed.

The attorney general contends that the executor has the power under the will to sell the Easton Proprietors' House; that the sale price should be applied to the educational trust established by the will; and that said trust falls within the category of a valid public or charitable trust.

The first contention of respondent Helen Hill Miller, sole heir at law of the testator, is that there is no specific devise of the Easton Proprietors' House in the will and therefore it passes as intestate real estate, since there is no general residuary estate into which it might fall; that if the court should construe the will of the testator as making a specific devise to Lawrence W. Champlin, as trustee, to be used as a museum, nevertheless if the museum trust is not feasible the real estate may be sold by reason of the express authority conferred by the will; and that the proviso of P. L. 1945, chap. 1563, *supra*, with reference to real estate *specifically devised* applies only where the power to sell decedent's real estate is derived solely from the statute, and does not apply where, as here, the power is contained in the will.

The respondent Helen Hill Miller further contends that the educational fund is not a valid public charitable trust; that it is invalid as a perpetuity; that even if it is a valid public charity it will still fail if the museum trust is held to be noncharitable, because it violates the rule against perpetuities; and that if the residuary clause is invalid the real estate involved therein must pass as intestate estate under the laws of Rhode Island.

In our judgment it is not necessary to determine whether the proposed museum trust is a public or private charitable trust, since that trust never came into being under the directions laid down by the testator for the guidance of the executor-trustee. Those directions in effect required the latter to determine not later than the expiration of the period allowed for the due administration of testator's estate whether or not Easton Proprietors' House could be established and preserved as a museum, and if not he was required to sell it and to use the funds thereby obtained together with other specified funds for the educational trust.

In other words the testator provided not for an educational trust to succeed the museum trust after the latter had been established and had subsequently failed, but rather for an alternative trust to be set up as soon as it was certain that his wishes for a public museum of the Easton Proprietors' House could not be realized. In the circumstances here the educational trust must necessarily arise within a life or lives in being and twenty-one years thereafter, because the testator himself has provided for its establishment immediately upon the executor-trustee's determination that the proposed museum trust was not feasible, and such determination must necessarily be made within the period of the administration of his estate.

The respondent Helen Hill Miller, however, argues that the educational trust cannot be considered a charitable trust because the conditions and provisions thereof are so onerous that only a very small number of persons may be benefited thereby, and because the expense of administration and supervision is so great and the amount available for educational purposes so small that the trust cannot be considered as a benefit to the public generally.

From a careful examination of all the provisions of the will relating to the educational trust, we are of the opinion that it meets the requirements of a charitable trust. The argument of respondent Helen Hill Miller that the educational trust is invalid is, in our opinion, without merit. The

language which she points out as imposing onerous and impractical conditions is for the most part merely precatory, not obligatory. The part which is precatory contains only suggestions of the testator which are not binding upon the trustees or the aid recipients. The part which is obligatory does not in our opinion invalidate the trust.

The requirements that the recipient of supplemental aid from the trust shall work in his spare time and in vacation and that he shall not keep a car or marry during his college career are not precatory but are binding upon him. But, in our judgment, they do not militate against the trust being deemed a public charity. They are entirely consistent with the objects and purposes of the testator to aid a class of needy students who are willing to work and sacrifice in order to obtain a college education.

The purpose of the testator as disclosed by the entire will must be carefully considered in deciding whether the educational trust is a public or a private charity. This court has held that educational trusts fall within the category of valid public trusts. *Webster* v. *Wiggin,* 19 R. I. 73. See also 2 Restatement, Trusts, §370, pp. 1146, 1147. And this is so even when the will provides that loans to indigent students must be repaid, *with interest. Morgan* v. *National Trust Bank of Charleston,* 331 Ill. 182. In the instant case there is no requirement that interest shall be paid on the loan, but only that the loan itself shall be repaid. Our conclusion is that the educational trust here involved is a valid charitable trust.

We agree with the contention of the respondent Helen Hill Miller that the prohibition of P. L. 1945, chap. 1563, section 1, against the sale of real estate specifically devised does not bar a sale of the real estate here because the express authority therefor is contained in the testator's will.

For the reasons above stated we are of the opinion that the questions submitted should be answered as follows: (a) The Easton Proprietors' House may be sold by the executor by virtue of the authority conferred by the testa-

tor's will. (b) Since in our judgment the testator set up the educational trust as an alternative trust and intended that all available funds should be turned over to it in the event that the executor-trustee, after following the pertinent directions as set out in the will, determined that the museum trust was incapable of establishment, the purchase price of the house referred to in question a. should become part of the residue of the estate and applicable to the educational trust. (c) The educational trust falls within the category of a valid public charitable trust. (d) In view of our answer to question c. it is not necessary to answer this question. (e) Since we have answered question c. in the affirmative, an answer to this question is deemed unnecessary.

The parties may present to this court for approval a form of decree, in accordance with this opinion, to be entered in the superior court.

*Burdick, Corcoran & Peckham, Craig P. Baker,* for complainant.

*William E. Powers,* Atty. Gen., *Albert J. Hoban,* Special Assistant, and Adm'r of Charitable Trusts, for respondent Attorney General.

*Alexander G. Teitz,* for respondent Helen Hill Miller.