Joyce HANLEY et al.

v.

Donald ALARIE.

No. 98–330–Appeal.

Supreme Court of Rhode Island.

Feb. 16, 2000.

Joseph G. Miller, Providence, for plaintiff.

Robert M. Brady, East Providence, for defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Court for oral argument on January 26, 2000, pursuant to an order that directed both parties to appear in order to show cause why the issues raised by this appeal should not be summarily decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that the issues raised by this appeal should be decided at this time. The facts insofar as pertinent to this appeal are as follows.

The appellant was appointed, pursuant to the terms of a will, as executrix of the estate of Marie P. Alarie (decedent), appellant's mother. During her lifetime the decedent owned a house and an adjoining lot at 61 Easton Avenue in Warwick. Prior to her death, the decedent deeded a one-half interest in the house, along with the adjoining lot, to her granddaughter, Ashley Marie Hanley (Ashley), a minor. In her will, she devised the other one-half interest to her two sons, Richard Alarie (Richard) and Donald Alarie (Donald or appellee). The decedent passed away in 1994.

At trial, appellant testified that, at the time of her mother's death, the residence was in poor condition and that she determined that it should be sold. Furthermore, appellant testified that she needed to sell the real estate to meet the expenses of the estate and of the real estate in particular. Therefore, she enlisted the aid of a realtor. Upon inspection of the property, the realtor advised appellant that the residence and adjoining lot were worth $53,000; the house was valued at $50,000 and the adjoining lot was valued at $3,000. The realtor also advised appellant that if she were to list the property and sell it on the open market, she would have to invest approximately $10,000 in the property for repairs. However, the realtor informed appellant that the realtor's father, a carpenter, might be interested in the property, and that he was willing to close quickly. Shortly thereafter, appellant signed a purchase and sales agreement with the realtor's father for the sum of $53,000. Expert testimony elicited at trial, which the trial justice found to be credible, indicated that the property was actually worth $77,000.

The appellant then petitioned the Probate Court, asking that she be appointed guardian of her daughter's interest in the residence and the lot, and requesting the court to allow her to sell her daughter's interest. This petition was granted. The appellant never petitioned the Probate Court in her capacity as executrix of the estate in order to sell the estate's interest in the real estate, nor did she seek permission from appellee to sell his interest in the real estate. Rather, appellant testified that she believed that she had the power under her mother's will, pursuant to Article Eleven, to sell the estate's interest.

Thereafter, appellant filed her final accounting with the Warwick Probate Court. The appellee objected to the accounting, and moved the court for the removal of appellant as executrix of the estate. The Probate Court denied the first and final account of the estate, disallowed the accounting, and granted appellee's petition to remove the executrix. The Probate Court held that appellant's failure to get written consent from a specific devisee to sell the real estate constituted maladministration of the estate. The appellant then appealed that decision to the Superior Court.

On appeal, a justice of the Superior Court, sitting without a jury, upheld the decision of the Probate Court. The trial

justice made the following findings. First, the trial justice found that appellant's testimony about her need to sell the property to meet expenses was not credible and that she had been successfully impeached on that issue. The trial justice also found that appellant did nothing to verify that $53,000 was the best price available for the property or that repairs costing $10,000 were necessary to market the property. Furthermore, the trial justice found the testimony of the realtor to be unreliable because "his motive is obvious." The trial justice concluded that "[appellant] sold the real estate for less than fair market value and that she did so without proper investigation into the true value of the property."

Finally, the trial justice ruled that, under G.L.1956 § 33–12–6, appellant was required to seek court approval and to obtain the written consent of her brothers, both of whom were specific devisees, before selling the property. The trial justice ruled that "[t]here is nothing in the statute to suggest that any powers of sale contained in a will would affect, change or nullify the statutory directive." The trial justice held that appellant violated her fiduciary duty by conveying and selling property in violation of the statute that circumscribed her authority. Therefore, the trial justice ordered that the executrix be removed and that a substitute administrator be appointed in accordance with the order of the Probate Court. The appellant then filed the instant appeal.

On appeal, appellant argues that the trial justice's interpretation of § 33–12–6 was erroneous. The appellant argues that she had the authority to sell the property without the consent of the devisees pursuant to the terms of the will. She also contends that it was wrong to conclude that she breached her fiduciary responsibility by selling the property for $53,000 in light of the information that she had at the time. Finally, appellant argues that the trial justice erroneously concluded that appellant's testimony that she had to sell the

real estate to meet expenses was successfully impeached.

■ "It is well settled that this [C]ourt will not disturb the findings of a trial justice sitting without a jury unless it can be shown that he or she overlooked or misconceived relevant and material evidence or was otherwise clearly wrong." *Shove Insurance, Inc. v. Tenreiro*, 667 A.2d 532, 534 (R.I.1995) (citing *Cerilli v. Newport Offshore, Ltd.*, 612 A.2d 35, 39 (R.I.1992)). It is our opinion that the trial justice's findings were not clearly wrong.

■ First, the trial justice did not err in concluding that appellant breached her fiduciary responsibility by selling the property for $53,000. In determining the actual value of the real estate, the trial justice found the testimony of William McGowan (McGowan), who testified that the property was worth $77,000, to be credible. McGowan's opinion of the value of the real estate was detailed and well-supported factually. McGowan, a licensed appraiser who has been engaged in real estate appraisal for thirty years, testified that, in preparing the appraisal, he inspected the exterior of the site and the neighborhood, and examined public records in the Warwick City Hall, which included building inspector records, deeds, and tax assessor's records. He then compared the property to three other properties similar in nature, using the comparable sales method of appraisal, a generally accepted approach that can be utilized in appraising real estate. Based on his examination, McGowan determined that the property was worth $77,000.

■ The trial justice rejected the testimony of another appraiser, Clifton O'Reilly, because he based his determination of the value of the property "on his memory of peeping in the windows and doors while going for evening walks in the neighborhood." The trial justice also rejected the appraisal of the realtor on whom appellant relied in forming her judgment of the value of the property because that realtor, a

salesperson, may have been motivated to sell the property to his father. The court's finding concerning the proper value of the real estate was based on a credibility determination, and the trial justice was not clearly wrong in choosing to accept McGowan's testimony over that of the other appraisers. Nor did the trial justice err in determining that appellant breached her fiduciary responsibility by accepting the realtor's appraisal without ever seeking the advice or counsel of another sales agent, broker, or appraiser. The trial justice found that

> "a reasonable person, in light of all the facts and circumstances with which [appellant] was confronted at the time, would have taken some steps to independently verify the reasonableness of the sales price and would not have relied on the opinion of a person having such a potential for self-interest."

■ Furthermore, the trial justice did not err in determining that appellant's testimony that she had to sell the real estate to meet expenses was impeached. Section 33–12–4 provides that

> "[i]f the personal property of a deceased person is insufficient to pay his or her debts, funeral expenses, charges of administration, and the expense of supporting his or her family * * * his or her executor or administrator shall sell or mortgage for an amount decreed, in the manner provided in this chapter, so much of his or her real estate or of any interest in the real estate as may be subject to and required for the purpose of payments."

If personal property is not sufficient to meet the expenses of the estate, the executrix must apply to the court for instructions for the sale of the real estate. *See Read v. Gardner,* 30 R.I. 485, 486, 76 A. 177, 177 (1910); *Reynolds v. Reynolds,* 27 R.I. 520, 524, 63 A. 804, 806 (1906). The executrix bears the burden of demonstrating that the sale of personal property is insufficient to meet the expenses of the

estate. *See Read,* 30 R.I. at 487, 76 A. at 178.

In the instant case, the trial justice found that appellant failed to prove by a preponderance of the evidence that the value of the personal property was insufficient to pay the estate's debts. The appellant testified that she had to pay some of the estate expenses out of her own pocket because the $1,200 left in the estate at the time of her mother's death was insufficient to meet those expenses. However, on cross-examination, appellant testified that she was going to sell the real estate "regardless [of the expenses associated with maintaining it]." Furthermore, it was determined that only about $620 had been spent on the expenses of the estate and that roughly $600 remained in the bank account prior to the sale of the real estate. Based on that testimony, it is our opinion that appellant's contention concerning the insufficiency of the personal estate was impeached and that the trial justice did not err in her determination.

■ Finally, the trial justice's interpretation of § 33–12–6 was correct. Section 33–12–6 provides that

> "The executor or administrator may sell the real estate of a deceased person despite the sufficiency of the personal property to pay the debts, funeral expenses and the items above enumerated whenever in the discretion of the probate court this action seems desirable in effecting a prompt and efficient settlement of the estate; *provided, however, that this authority shall not be given with reference to real estate specifically devised, unless the specific devisees consent in writing thereto.*" (Emphasis added.)

The trial justice held that § 33–12–6 was clear and unambiguous, and that, pursuant to the provision, the representative of an estate could sell the real estate of a decedent despite the sufficiency of personal property to pay debts only upon approval of the court for such a sale, and only after

obtaining the written consent of specific devisees.

On appeal, appellant argues that § 33–12–6 does not apply because Article Eleven of her mother's will contains a broad power of sale clause. To support her argument, appellant cites *Champlin v. Powers*, 80 R.I. 30, 90 A.2d 787 (1952), wherein this Court held that the prohibition against the sale of real estate specifically devised did not bar the sale of the property in question because there was express authority for such a sale contained in the testator's will.

In *Champlin*, the decedent left a will which provided that a piece of his property, located on Walnut Street in Newport, was to be continued as a museum as long as it could properly be maintained as one. The will provided:

" 'If the funds are not sufficient for preserving the * * * House as a museum then the property must be sold—unless someone could be found to contribute to · the fund to help keep the house a museum. Somebody or some organization interested in the earliest houses and their construction, and the earliest furniture existing in Newport, might be found.' " *Id.* at 32, 90 A.2d at 788.

When it was determined that there was not sufficient money in the estate to establish and maintain the house as a museum, the executor sought to sell the property. The executor filed a bill in equity for construction of the will, and the following question was certified to this Court: "Has Your Orator the power to sell ·the aforementioned [property] or is there a specific devise of said House * * * barring Your Orator from selling said House * * *." *Id.* at 34, 90 A.2d at 789. This Court found that Public Laws 1945, chapter 1563, the predecessor of § 33–12–6, only applied where the "power to sell decedent's real estate is derived solely from the statute, and does not apply where, as here, the power is contained in the will." *Champlin*, 80 R.I. at 35, 90 A.2d at 790.

*Champlin*, however, can be distinguished from the instant case. Article Eleven does not contain the same express authority to sell the property as did the provision in the will involved in the *Champlin* case. Article Eleven, upon which the appellant relies, grants the executrix the power "[t]o do all such acts, take all such proceedings and exercise all such rights and privileges, although not herein specifically mentioned, with respect to any such property, as if the absolute owner thereof and in connection therewith to make, execute and deliver any instruments and to enter into any covenants or agreements binding my estate." Furthermore, it was never determined whether there was a specific devise of the property in *Champlin*. In that case, the decedent's intent was clearly to establish a museum. To accomplish that purpose, the decedent left the property in trust to the executor. When his intent could not be fulfilled, the will directed that the property be sold, and that the funds be used to support a scholarship. In the instant case, however, decedent specifically gave her two sons a one-half interest in the property to share as tenants in common. The will provided that each respective share should pass to surviving issue should either son predecease her. Therefore, it was decedent's intent that her sons, or their issue, receive a share of her real estate.

Section 33–12–6 contains a clear and unambiguous mandate that an executor obtain both court approval and the written approval of the devisees before selling real estate that is specifically devised. The trial justice's interpretation of the provision was correct. Accordingly, the appellant's appeal is denied and the judgment of the Superior Court is affirmed.