In re Edwin H. TETREAULT.

No. 2009–166.

Supreme Court of Rhode Island.

Jan. 13, 2011.

Joseph M. DiOrio, Esq., Providence, for Trustee.

Christopher M. Lefebvre, Esq., Pawtucket, for Edwin H. Tetreault.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, and ROBINSON, JJ.

## OPINION

Chief Justice SUTTELL, for the Court.

This case came before the Supreme Court pursuant to four questions certified by the United States Bankruptcy Court for the District of Rhode Island in accordance with Article I, Rule 6 of the Supreme Court Rules of Appellate Procedure. The questions seek our advice on the interpretation of G.L.1956 § 9–26–4.1 (the homestead statute) as it applies to Edwin H. Tetreault (debtor), a devisee of real property under the residuary clause of a Rhode Island will. The debtor has claimed a homestead estate exemption in his one-half interest in the real property, and the trustee in bankruptcy has objected. The questions certified to us by the Bankruptcy Court are:

"1. May a devisee of real property under the residuary clause of a Rhode Island will satisfy the ownership or possessory rights enumerated in R.I. Gen. Laws § 9–26–4.1 in order to qualify for the Rhode Island homestead estate exemption?

"2. May a joint owner of property, who is the sole occupant of the property, acquire a homestead exemption therein under R.I. Gen. Law § 9–26–4.1?

"3. Does the devisee of a residuary interest in real property have legal standing to occupy, or intend to occupy property, after the executrix has initiated a procedure to evict the devisee from the property, and/or initiate probate proceedings to sell the property?

"4. Finally, and although the question is not before the Bankruptcy Court, if you determine that a right of homestead is applicable in this case, a further question needing resolution is whether such homestead rights would prevent the sale of the property 'for the payment of legacies' pursuant to R.I. Gen. Laws § 9–26–4.1? I do not feel this is a hypothetical question, since the parties are litigating related issues in the Rhode Island Probate and District Courts."

For the reasons hereinafter set forth, we answer questions one and two in the affirmative, we answer question three in the negative, and in light of our answers to the previous three questions, we see no need to answer question four.

## I

### Facts and Procedural History

The relevant facts are not in dispute and may be summarized as follows.[1] Mr. Tetreault and his sister, Anne M. O'Mara (executrix), are the joint heirs of their deceased mother's estate under the residuary clause of her will. Their mother, Ruth B. Tetreault (testatrix), passed away on June 4, 2006. Ms. O'Mara was appointed

---

1. We glean the facts from a statement of undisputed facts included within the certifica- tion order of the Bankruptcy Court, as well as from the parties' submissions.

executrix of the estate on June 6, 2007. At the time of her death, testatrix was the sole owner of the disputed parcel of real property, located at 36 Lakeview Avenue, Lincoln, Rhode Island (the property). Disposition of the property was controlled by the residuary clause of testatrix's will, which provides that the rest, residue, and remainder of the estate be divided equally between Ms. O'Mara and Mr. Tetreault. After testatrix's death, Mr. Tetreault resided alone at the property, where he had lived for most, if not all, of his life.

Under another clause of the will, executrix claimed a power of sale over the property for the satisfaction of any debts and expenses of testatrix's estate, such as executrix may deem proper.[2] On August 27, 2008, executrix mailed to Mr. Tetreault a notice of termination of tenancy based on G.L.1956 § 34–18–37, directing him to vacate the property by October 1, 2008. After Mr. Tetreault failed to vacate the property, executrix instituted an eviction action in the District Court on October 7, 2008.

On the next day, October 8, 2008, Mr. Tetreault filed in Bankruptcy Court a petition for relief under Chapter 7 of the Bankruptcy Code. Joseph M. DiOrio (trustee) was appointed bankruptcy trustee. In his bankruptcy schedules, debtor listed a one-half interest in the property, and claimed therein a homestead exemption under § 9–26–4.1. The debtor maintains that his claimed homestead interest in the property places any interest that he may have in the property beyond the laws of attachment, levy on execution and sale for payment of debts or legacies. On December 2, 2008, and December 3, 2008, trustee filed objections to debtor's claim of homestead exemption.

The trustee's position is that: (1) debtor lacked sufficient ownership interest in the property to claim the homestead exemption; (2) even if debtor's ownership interest were sufficient to claim the exemption, he does not fall within the statutory definition of "family" under the homestead statute; and (3) debtor lacked the legal standing to occupy or intend to occupy the property after executrix initiated the procedure to sell and/or evict debtor from the property.

As a result of debtor's bankruptcy filing, the probate estate's efforts to proceed with the eviction action in District Court were stayed by the provisions of 11 U.S.C. § 362.[3] On January 5, 2009, the automatic stay terminated upon the Bankruptcy Court's entry of a discharge of debtor. Subsequently, on February 3, 2009, the Bankruptcy Court issued an order authorizing executrix to proceed with her efforts to evict debtor from the property. Thereafter, the District Court heard cross-motions for summary judgment relating to the probate estate's eviction action. A District Court judge granted summary judgment for possession of the property in favor of the estate, and debtor appealed from the judgment to the Superior Court.

In addition to the eviction efforts in District Court, Ms. O'Mara, acting in her

---

2. The will provides in pertinent part:

"I hereby authorize my execut[rix], whenever in [her] opinion it shall be necessary or advisable, to sell at private or public sale, at such prices and upon such terms as [she] shall see fit * * * any property, real or personal, which I shall own at the time of my death and to execute assignments, transfers and conveyances thereof as [she] shall deem proper without any application to any court for the right to do so."

3. Upon filing a petition for bankruptcy, the provisions of 11 U.S.C. § 362 operate as an automatic stay, protecting the debtor against certain actions of creditors, including the continuance of judicial proceedings against the debtor and any act to exercise control over property of the estate.

capacity as executrix, filed a petition in the Probate Court of the Town of Lincoln for sale of the property to effectuate the prompt and efficient administration of the estate and to pay the debts and expenses of the estate. On April 3, 2009, the Probate Court granted executrix's petition for sale of the property, from which order debtor also appealed to the Superior Court.

On April 29, 2009, the Bankruptcy Court judge certified and submitted to this Court the four enumerated questions, together with a statement of undisputed facts. Upon accepting the Bankruptcy Court's certification order, this Court declared that its decision to address the certified questions "should in no way be construed as requiring or justifying the delay or postponement of any other pending judicial proceeding involving the parties to this litigation."

Subsequently, debtor's appeals from the District Court and the Probate Court were consolidated in the Superior Court, and a hearing on cross-motions for summary judgment was held on September 11, 2009. On February 26, 2010, a Superior Court hearing justice granted summary judgment in favor of the estate on both appeals, thereby upholding the District Court's judgment of eviction and affirming the Probate Court's order authorizing executrix to sell the property. In granting summary judgment in favor of the estate, however, the Superior Court justice held that the orders of February 26, 2010, should not become final until this Court determined that the pendency of the certified questions did not prohibit the orders from becoming final or until this Court issued a final ruling in the present case.

Soon thereafter, executrix filed an emergency motion for reconsideration by the Superior Court of the court's entry of conditional orders, seeking removal of the conditions and entry of final orders and judgments. According to executrix, since testatrix's death, debtor continued to occupy the property alone without paying real estate taxes, insurance premiums, or rent to the estate or to executrix, coowner of the property. Since the date of the Superior Court's conditional order, executrix maintained that she became unable to continue paying the property's expenses and as a result the property had become uninsured and imperiled. Furthermore, the property's deteriorating condition was documented in two separate appraisals and an inspection report. In consideration of the aforementioned state and condition of the property, executrix argued that it was necessary to sell the property as soon as possible in order to limit the estate's liability, pay the debts and expenses of the estate, and to effectuate the estate's prompt and efficient administration.

After a hearing on executrix's emergency motion, the Superior Court justice ordered the removal of the conditions contained in the court's orders of February 26, 2010, and he entered final judgments in favor of the estate, thereby denying both of Mr. Tetreault's appeals. The court thus upheld the District Court's judgment of eviction and affirmed the Probate Court's order authorizing sale of the property. On the next day, the Superior Court justice granted Mr. Tetreault's motion to stay the enforcement of the court's final judgments, pending a timely appeal to this Court. Mr. Tetreault initially filed appeals from the final judgments; however, the appeals were withdrawn on May 27, 2010, and as such, the Superior Court's final judgments no longer are subject to attack.

## II

### Standard of Review

Rule 6 authorizes this Court to answer questions of law certified to it by any

federal court, including the United States Bankruptcy Court. *In re D'Ellena,* 640 A.2d 530, 531 (R.I.1994). Rule 6(a) provides in pertinent part:

"This Court may answer questions of law certified to it by * * * a United States District Court when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of this Court."

Rule 6 affords this Court discretion in deciding whether it should respond to questions certified by a federal court. *Jefferson v. Moran,* 479 A.2d 734, 738 (R.I. 1984).

■ If we determine that certified questions are properly before us, certified questions are questions of law and are reviewed *de novo* by this Court. *See Carnevale v. Dupee,* 783 A.2d 404, 408 (R.I.2001); 5 Am.Jur.2d *Appellate Review* § 916 (2007).

■ Additionally, when presented with questions of statutory interpretation, this Court engages in a *de novo* review. *State v. Greenberg,* 951 A.2d 481, 489 (R.I. 2008). "As we have noted previously, 'when the language of a statute is clear and unambiguous, [this Court] must interpret the statute literally and must give the words of the statute their plain and ordinary meanings.'" *State v. LaRoche,* 925 A.2d 885, 887 (R.I.2007) (quoting *State v. Oliveira,* 882 A.2d 1097, 1110 (R.I.2005)). "When a statute is ambiguous, however, we must apply the rules of statutory construction and examine the statute in its entirety to determine the intent and purpose of the Legislature." *Harvard Pilgrim Health Care of New England, Inc. v. Rossi,* 847 A.2d 286, 290 (R.I.2004).

# III

# Discussion

## A

### Question One

"May a devisee of real property under the residuary clause of a Rhode Island will satisfy the ownership or possessory rights enumerated in R.I. Gen. Laws § 9–26–4.1 in order to qualify for the Rhode Island homestead estate exemption?"

■ This first question requires us to determine whether being a tenant in common, by virtue of the residuary clause of a will, of real property that is subject to potential sale for the settlement of testatrix's estate, is sufficient to satisfy the "ownership or possessory rights" prong of the homestead statute. The trustee argues that any interest debtor had in the property was defeased when executrix initiated the procedure to sell the property by filing an eviction complaint with the District Court. The trustee contends, therefore, that debtor was not an "owner," and that debtor did not have sufficient possessory rights requisite for an exemption under the homestead statute. The debtor, on the other hand, argues that as a devisee under testatrix's will, he satisfied the ownership or possessory rights specified by the homestead statute and therefore was not barred from claiming the homestead estate exemption. We agree, and for the following reasons answer question one in the affirmative.

The homestead statute provides, in pertinent part, that an estate of homestead may be acquired "by an owner or owners of a home or one or all who rightfully possess the premise [*sic*] by lease or otherwise, and who occupy or intend to occupy the home as a principal residence." Section 9–26–4.1(a). This creates two con-

ditions precedent to the claiming of an exemption under the homestead statute: (1) ownership or rightful possession; and (2) occupation of or intent to occupy the premises. Resolution of the first certified question turns on the ownership prong.

■ This Court has clearly stated the principle that "[t]itle to real property vests immediately upon a testator's death in the devisees." *DiCristofaro v. Beaudry,* 113 R.I. 313, 319, 320 A.2d 597, 601 (1974). It is also well established under G.L.1956 § 33–12–6 that an executrix may move to sell real property for the prompt and efficient settlement of the probate estate. The fact that such a sale may be necessary, however, does not prevent title from vesting immediately in the heirs or devisees upon the death of the testatrix. *See Votolato v. McCaull,* 80 R.I. 301, 306, 96 A.2d 329, 331 (1953). Upon the death of testatrix, therefore, a devisee in debtor's position is vested with a fee simple interest in the devised property subject to defeasance. *DiCristofaro,* 113 R.I. at 319, 320 A.2d at 601. As the only surviving heirs and general devisees[4] under testatrix's will, debtor and his sister each was vested with a one-half interest as a tenant in common immediately upon the death of testatrix. *See* G.L.1956 § 34–3–1 ("All * * * devises or legacies, of real or personal estate, which shall be made to two (2) or more persons * * * shall be deemed to create a tenancy in common * * *.").

Section 9–26–4.1(b) specifies that an " 'owner of a home' includes a sole owner, joint tenant, tenant by the entirety or tenant in common." Based upon the plain meaning of this portion of the homestead statute, it is clear that one in debtor's position—a general devisee with a defeasible fee simple interest in the property as a tenant in common—qualifies as an "owner" of the property until such time that his interest may become defeased.

We conclude that a devisee of real property under the residuary clause of a Rhode Island will satisfies the ownership requirement enumerated in the homestead statute to qualify for the homestead estate exemption until that point when he or she is divested of that interest.

## B

### Question Two

"May a joint owner of property, who is the sole occupant of the property, acquire a homestead exemption therein under R.I. Gen. Law § 9–26–4.1?"

■ This question requires us to determine whether one in debtor's position is precluded from claiming the homestead estate exemption based on the statutory reference to "family" in § 9–26–4.1(b). The trustee argues that even if debtor's ownership interest in the property is sufficient to qualify him as an owner, debtor does not fit within the statutory definition of a family because he is a tenant in common who occupies the property alone, and therefore debtor is outside the scope of the homestead estate exemption. We disagree, and for the following reasons answer question two in the affirmative.

Section 9–26–4.1(b) qualifies the term "owner of a home," providing in pertinent part:

"For the purposes of this section, 'owner of a home' includes a sole owner, joint tenant, tenant by the entirety or tenant in common; provided, that only one owner may acquire an estate of homestead in the home for the benefit of

---

**4.** It is undisputed in this case that the residuary clause in testatrix's will created a general devise of the property at issue. This is consis-

tent with the general rule "that a residuary bequest is general, and not specific." *In re Martin,* 25 R.I. 1, 54 A. 589, 596 (1903).

his or her family; and provided further, that an estate of homestead may be acquired on only one principal residence for the benefit of a family. For the purposes of this section, 'family' includes either a parent and child or children, a husband and wife and their children, if any, or a sole owner."

Question two refers to a "joint owner," which is presumed to include either a joint tenant, tenant by the entirety, or tenant in common. As discussed above, from the plain meaning of the statute, it is clear that debtor—a tenant in common—does qualify as an "owner of a home" for purposes of the statute.

This question, then, turns on whether the references to "family" in § 9–26–4.1(b) preclude debtor from qualifying for the homestead exemption. The trustee argues that the homestead statute unambiguously requires that the homestead exemption be claimed for the benefit of a statutorily defined "family," and that debtor does not fit within the statutory definition of family because he is a tenant in common residing at the property by himself. Further, trustee maintains that the General Assembly, through its inclusion of the term "sole owner" in the definition of family, expressly allowed a sole owner to claim a homestead exemption in property that he owns and resides in by him or herself. The trustee argues that, by not including the term "owner of a home" in the definition of family, the General Assembly did not intend to allow a tenant in common living in the property by him or herself to claim a homestead exemption.

Contrariwise, debtor argues that the homestead statute contains an ambiguity. Section 9–26–4.1(b) indicates that a "family" may consist of only one individual, the "sole owner," and also that "owner of a home" includes joint owners such as tenants in common. The debtor argues that

although § 9–26–4.1(b) does not expressly include tenants in common within the definition of family, the homestead statute as a whole manifests a clear legislative intent to benefit tenants in common as well as sole owners. Moreover, debtor claims that the contested provisions of § 9–26–4.1(b) are intended only to be a limitation of "one homestead per family and one family per homestead," and that this provision is entirely distinct from the right to claim a homestead estate exemption as enumerated in subsection (a) of § 9–26–4.1.

We agree with debtor's position that the homestead statute is ambiguous in its treatment of the term "family." We consistently have held that when a statutory provision is unclear and ambiguous, this Court will consider the statute in its entirety to determine the purpose of the provision as intended by the Legislature. *Rossi*, 847 A.2d at 290. The underlying policy of homestead exemptions is to "promote the stability and welfare of the state by securing to the householder a home, so that the homeowner and his or her heirs may live beyond the reach of financial misfortune * * *." *Public Health Trust of Dade County v. Lopez*, 531 So.2d 946, 948 (Fla.1988). Courts widely have held that the purpose of homestead exemptions requires that they be construed liberally in favor of debtors. *See, e.g., Dwyer v. Cempellin*, 424 Mass. 26, 673 N.E.2d 863, 866 (1996) (agreeing with the "overwhelming weight of authority in other jurisdictions * * * that homestead exemptions should be liberally construed in favor of debtors"); 40 Am.Jur.2d *Homestead* § 10 at 392 (2008) ("Any ambiguities in a homestead statute must be liberally construed in favor of the debtor.").

Section 9–26–4.1 expressly affords an individual—a "sole owner"—eligibility for the homestead estate exemption should he or she otherwise qualify under subsection

(a) of § 9–26–4.1. Although subsection (b) of § 9–26–4.1 does not explicitly include tenants in common within the definition of family, there is no indication that the General Assembly intended the odd result to allow a sole owner residing alone to claim the homestead exemption for him or herself, but not allow a tenant in common residing alone to be eligible for the exemption. Instead, the homestead statute as a whole, construed liberally in favor of debtor, manifests an intent to benefit tenants in common as well as sole owners.

Furthermore, in construing the homestead statute in its entirety, it is apparent that subsection (a) of § 9–26–4.1 purports to define *who* may acquire the homestead estate exemption, while the contested provisions of subsection (b) of § 9–26–4.1 contain separate conditions intended to limit the exemption to one homestead per family and one family per homestead.

We conclude that a tenant in common, who is the sole occupant of a property, may qualify as a "family" and therefore may be eligible for a homestead exemption under § 9–26–4.1.

## C

### Question Three

"Does the devisee of a residuary interest in real property have legal standing to occupy, or intend to occupy property, after the executrix has initiated a procedure to evict the devisee from the property, and/or initiate probate proceedings to sell the property?"

■ It is well established in bankruptcy law that a debtor's exemptions are determined as of the date of filing of the bankruptcy petition. *In re Cunningham,* 354 B.R. 547, 553 (D.Mass.2006). This third question, therefore, requires us to determine precisely what legal interest debtor had in the property on the date he filed his bankruptcy petition.

As discussed above, debtor in this case was a general devisee of real property, whose fee simple interest was subject to defeasance. Here, debtor filed his petition for bankruptcy on October 8, 2008, one day after executrix commenced an eviction action and more than one month after executrix issued a notice of termination of tenancy to debtor to prepare the property for sale to settle the probate estate. Soon after debtor filed for bankruptcy, executrix filed a petition in Probate Court for sale of the property. Later, in April 2009, the Probate Court granted executrix's petition for sale of the property, and the District Court ordered eviction of debtor from the property. After debtor appealed the two adverse judgments, the Superior Court entered final judgments on April 27, 2010, denying debtor's appeals, thereby affirming the Probate Court's order authorizing sale of the property and upholding the District Court's order of eviction.

The debtor argues that the pending eviction action at the time of the bankruptcy filing did not preclude the availability of the homestead exemption. The debtor further contends that only a final judgment by a court of competent jurisdiction "would diminish the availability of [debtor's] homestead exemption." The trustee, on the other hand, argues that debtor lacked legal standing to occupy or intend to occupy the property because of the fact that executrix initiated attempts to evict debtor so that the property could be sold under the will's power of sale clause. We agree, and for the following reasons answer question three in the negative.

Rhode Island's probate laws and the terms of the will govern the sale of real property by an executrix after the death of a testator. Section 33–12–6 provides that an executrix may sell real property of the

estate despite the sufficiency of personal property to pay the debts of the estate "whenever in the discretion of the probate court this action seems desirable in effecting a prompt and efficient settlement of the estate." Section 33–12–6 further provides that the Probate Court's authority shall be granted for the sale of *specifically* devised real property only when the specific devisee consents in writing thereto. If *generally* devised real property is sought to be sold under these circumstances, however, no written consent by the devisee is required. *DiCristofaro*, 113 R.I. at 319, 320 A.2d at 600.

In addition to the statutory authority to sell, executrix in this case possessed the power to sell testatrix's real property by virtue of the provisions of her will. Rhode Island's probate laws do not directly address the interplay between the power of sale in a will and the statutory scheme discussed above concerning the authority required for the sale of generally devised real property by an executrix. An examination of whether Probate Court approval is required for the sale of generally devised real property, when an executrix possesses a valid power of sale under the will, is instructional in this Court's answer to certified question three.

In the absence of a testamentary power of sale, § 33–12–6 contains a clear mandate that an executrix obtain Probate Court approval before selling real estate for the settlement of an estate. *See* § 33–12–6 (stating that an executor may sell the real estate of the testator "whenever in the discretion of the probate court this action seems desirable in effecting a prompt and efficient settlement of the estate"). The only reference made in § 33–12–6 to a testamentary power of sale follows that mandate, providing: "An executor with a valid power of sale under a will may convey specifically devised property with the written consent of the specific devisee." This provision does not require that an executrix with a valid testamentary power of sale also obtain Probate Court approval for the sale of real property to settle an estate. Instead, this provision merely requires consent of the specific devisee for the conveyance of specifically devised property based on the testamentary power of sale.

Moreover, this Court has stated that in the case of an "absolute and plenary" grant of power of sale in a will, the executrix could have conveyed an absolute fee in generally devised real property at any time from the moment of testatrix's death. *Industrial Trust Co. v. Colt*, 50 R.I. 252, 258, 146 A. 857, 860 (1929). Thus, in the case of the sale of generally devised property, not only is consent of the general devisee not required, but it also is apparent in the context of this case that consent of the Probate Court is not required.

In *Champlin v. Powers*, 80 R.I. 30, 37, 90 A.2d 787, 791 (1952), this Court held that the statutory prohibition against the sale of specifically devised real estate did not bar the sale of the property in question because the express authority for such a sale was contained in the testator's will. In *Champlin*, the decedent left a will providing that a parcel of his real property was to be preserved as a museum as long as it properly could be so maintained. The will provided in pertinent part that "[i]f the funds are not sufficient for preserving the * * * House as a museum then the property must be sold * * *." *Id.* at 32, 90 A.2d at 788. When it was determined that the estate lacked sufficient funds to maintain the house as a museum, the executor sought to sell the property. The executor filed a bill in equity for construction of the will, and the following question was certified to this Court: "Has Your Orator the power to sell the aforementioned

[property] or is there a specific devise of said [property] * * * barring Your Orator from selling said [property] * * *?" *Id.* at 34, 90 A.2d at 789. This Court found that Public Laws 1945, chapter 1563, the predecessor of § 33–12–6, applied only when the "power to sell decedent's real estate is derived solely from the statute, and does not apply where, as here, the power is contained in the will." *Champlin,* 80 R.I. at 35, 90 A.2d at 790.

The *Champlin* Court never determined whether there was a specific or general devise of the property in question, indicating that Probate Court approval pursuant to § 33–12–6 is not required for either type of devise where the will contains express authority to sell the property. Thus, the only express requirement for the sale of property by an executrix holding a testamentary power of sale is enumerated in § 33–12–6, where the conveyance of specifically devised property requires the written consent of the specific devisee.

As discussed above, upon the death of his mother, debtor in this case possessed a fee simple interest in the generally devised property, subject to defeasance by executrix's statutory as well as testamentary powers of sale. In *DiCristofaro,* 113 R.I. at 319, 320 A.2d at 601, this Court made clear that an actual sale of generally devised real property under § 33–12–6 defeases the title of the devisee. We also stated in *DiCristofaro* that a general devisee's title to the property in question was defeased once the executor "invoked the procedure of § 33–12–6," however, this Court did not set forth the specific action or actions by the executor that would "invoke" the statutory procedure to sell the property. *DiCristofaro,* 113 R.I. at 319–20, 320 A.2d at 601. In this case, trustee argues that by issuing a notice of termination of tenancy and initiating eviction proceedings, executrix "invoked" the statutory procedure of § 33–12–6, thereby defeasing debtor's title to the property. The debtor, on the other hand, argues that only a final judgment by an appropriate court should be sufficient to defease debtor's title to the property.

*DiCristofaro* can be distinguished from the instant case because here executrix possessed an express power of sale under testatrix's will. Unlike the statutory power of sale, the testamentary power of sale in this case may be exercised by executrix without obtaining Probate Court approval. Although the property had not yet been sold at the time of bankruptcy filing, executrix had clearly demonstrated her intent to sell the property in order to settle the probate estate and had taken affirmative steps to do so. Further, even if at the time of bankruptcy filing executrix had not yet "invoked" the statutory procedure of § 33–12–6, executrix nonetheless had initiated efforts to exercise her express power of sale under testatrix's will.

The public policy of this state favors the prompt settlement of decedents' estates. *Ranalli v. Edwards,* 98 R.I. 394, 399, 202 A.2d 516, 519 (1964). Based on this public policy, we hold that the express testamentary grant of power of sale includes the right of an executrix to immediate possession and control of the generally devised property in order to make such property marketable for sale. This right includes the authority to evict a tenant in common remaining on the generally devised property contrary to the interest of the estate. *See* 34 C.J.S. *Executors and Administrators* § 388 at 217 (2009) ("An executor * * * entitled to temporary possession of the decedent's realty for the purpose of settling the estate may prosecute * * * an action of [eviction] * * *."); *see also* Unif. Probate Code § 3–709 (1997), 8 U.L.A. 155 (1998) (providing that when possession of the decedent's property is necessary for

purposes of administrating the estate, the executor "may maintain an action to recover possession of property").

For these reasons, we conclude that debtor did not have legal standing to occupy or intend to occupy the generally devised property at the time he filed his bankruptcy petition. By that time, executrix already had taken affirmative steps to exercise her testamentary power of sale by issuing the notice of termination of tenancy and filing the eviction complaint. At the time of bankruptcy filing, even though debtor may not have been defeased of his ownership interest, he nonetheless was divested of his possessory interest in the property. Here, executrix elected to exercise her express power of sale under the will and she had clearly indicated to debtor her intent to do so. Accordingly, at the time of bankruptcy filing, debtor no longer had the legal right to continue to occupy or intend to occupy the property against the will of executrix and to the detriment of the probate estate.

We conclude, therefore, that a general devisee of a residuary interest in real property does not have legal standing to occupy or intend to occupy property after the executrix has initiated a procedure to evict the devisee from the property based on the authority granted in an express power of sale in the testatrix's will. Because we have answered question three in the negative, we respectfully decline to address question four.

## IV

### Conclusion

For the foregoing reasons, we answer questions one and two in the affirmative, and question three in the negative; given our answer in question three, we deem it unnecessary to address question four. The papers in the case may be remanded to the Bankruptcy Court for further proceedings.

Justice INDEGLIA did not participate.